VIVIAN A. THOMPSON, Plaintiff and Appellant, *v.*
MILDRED D. BANTZ, Defendant and Respondent.
No. 9914.
Submitted November 6, 1959. Decided December 1, 1959.
346 Pac. (2d) 982.

See **C. J. S.** Reformation of Instruments, § 25.

Milton G. Anderson, Sidney, for appellant. Mr. Anderson argued orally.

Vernon Hoven, Plentywood, for respondent. No oral argument for respondent.

MR. CHIEF JUSTICE HARRISON:

On April 13, 1955, plaintiff filed her complaint seeking reformation of a warranty deed executed by her as grantor to the defendant as grantee, conveying certain lands in Sheridan County, Montana, on the ground that due to inadvertence and mistake in the drafting of said deed the scrivener had omitted therefrom a reservation and exception of a fifty percent interest in all oil and mineral rights upon said lands, which a contract for deed previously executed provided should be contained therein, and further alleging that the lands had been leased for oil and gas exploration by the defendant, and sought an accounting by the defendant of all money received as delay rental payments, and for the payment of fifty percent thereof to plaintiff.

By answer, defendant denied there was any mistake in the deed, admitted the execution of the contract for deed and the oil lease, the receipt of annual delay rentals, but denied that the plaintiff was entitled to any part thereof.

From the record, it appears that the plaintiff in the year 1942 was the owner of certain lands in Sheridan County, embracing approximately 800 acres; that on July 2, 1942, she entered into a contract for deed with the defendant, by the terms of which the defendant purchased the lands for the sum of $1,200. The contract contained this provision with regard to the minerals:

"It is further understood and agreed by and between the parties hereto that in selling above premises to vendee, vendor retains a fifty percent interest in all oil and mineral rights running with the land, and that deed when executed will reserve said fifty percent of oil and mineral rights to vendor."

The contract was prepared by an attorney at the instruction of the plaintiff. When the payments provided therein had been completed under the contract, the same attorney prepared the

warranty deed for execution by the plaintiff and this deed, as so prepared, failed to make the reservation and exception provided to be inserted therein by the terms of the contract for deed. The attorney testified that he was sure he was not instructed to leave it out, and in explaining the situation he stated:

"The only explanation I could give, your Honor, is that I was requested to prepare a deed covering this land and I believe that the stenographer, who was Mrs. Youngstrom, was told to prepare the deed and the contract for deed was not consulted. Had I noticed that provision in the contract for a reservation, I would have inserted it in the deed. It was an oversight, probably on my part. The only way I could explain it is that I have never had at that time prepared a deed containing a mineral reservation, and it wasn't in my mind and it wasn't part of my experience of practice to insert a mineral reservation in a deed and I wasn't conscious of it.

"Q. So then it was through an error largely on your part. A. I believe it was, yes.

"Q. And not through any consent or agreement of these parties? A. As far as I know it wasn't.

"Q. And you are willing to admit that it was an oversight on your part, as head of that law office? A. I presume that I should have read it over, but I did not."

It was not until August of 1951 that the plaintiff discovered the omission of the mineral reservation and she and her husband went to see the defendant. According to her testimony as the result of their conversation on that occasion the defendant agreed to give her one-half of the oil and mineral rights, and that the defendant would go to Plentywood and get an attorney to fix it up. The contract provided that there was a written agreement in existence between the plaintiff and Sheridan County upon which there was an unpaid balance due for past due real estate taxes upon the land, which the defendant assumed and agreed to pay in addition to the consideration expressed in the contract. It appears that during the conversation between

the parties, the question of whether or not Sheridan County made any reservation of royalties came up and the plaintiff's husband agreed to check into this and notify the defendant. On August 26, 1951, plaintiff's husband, by letter, informed the defendant that the county did not withhold any oil or gas rights. This letter contains this paragraph:

"Vivian is quite anxious to get her share of record before something happens to some of us so if it would be convenient for you to meet us in Plentywood or any where there is a notary public we could finish it up. You set the day and place, we would prefer the afternoon about 2:30 or after, but if the morning is more convenient for you it is O. K."

On September 11, 1951, plaintiff's husband again wrote to the defendant, sending her three patents covering the 800 acres, together with three supplementary patents relinquishing the coal rights by the United States, and advised defendant that the three supplementary patents had not been recorded. He further advised defendant that there was no mention of an oil reservation by the government on the original patents.

On October 18, 1951, defendant wrote to plaintiff and her husband and stated:

"I just know you folks are thinking 'awfully awful' of me but to get a day for myself and the attorney to be able to get together has been my reason for waiting to write to you, So today I'll write you and tomorrow I expect to see Mr. Hoven (Vernon) that is, (if he isn't hunting or something else) and definitely have a day when we can get fixed up at his office. Then—I'll write you right away so when you folks come we will be able to go ahead with this little deal and get it completed. Hoven looked up everything so that everything will be in order. I got your letters (and the patents, etc.)".

On July 7, 1952, plaintiff's husband wrote to defendant and stated:

"Vivian and I have been wondering some lately about our

share of the minerals on her old place and just what seems to be holding the deal up.

"I don't know your attorney except by name, but all it takes is a mineral deed back to us for our half and that's all there is to it.

"If there are other reasons will you drop us a line as we would like to get it cleaned up."

No response was received to this letter.

The record further discloses that the plaintiff, at the time of the execution of the contract for deed, was acquainted with minerals such as oil and gas, whereas defendant admitted she was not oil conscious, and knew nothing about it. The defendant admitted the visit of plaintiff and her husband, but did not recall the date. She admitted they discussed the deed and the reservation and she stated that she assumed the county had retained one-half of the royalties and that the Thompsons were going to look into that matter at Plentywood. She further stated that in the conversation she had said that if the county had retained one-half of the royalties she would have to ask for it, or fight for it, and if the Thompsons would help her she would give them one-half of the royalties, but when she found out that the county did not reserve any royalties that concluded the matter. She further testified that plaintiff advised her a mistake had been made in the deed, and that for old friends sake, referring to the parents of plaintiff and defendant, the plaintiff would like a small settlement. In explanation of her letter of October 18, she stated she had not seen the Thompsons since they left her home following the conversation, and she did not know how they could go about making this settlement until they had a chance to get together.

The action was tried to the court, sitting without a jury, and the court found:

"That the plaintiff has not submitted to the Court clear and convincing proof sufficient to grant relief by reformation of the warranty deed on the ground of mistake. That the plaintiff

has not produced any clear and convincing proof that the clause pertaining to the reservation of mineral rights was the intent of the parties prior to the execution of the contract for deed covering the described property nor that it was the intent of the parties that such mineral reservation should be included in the warranty deed as executed and delivered to the defendant by the plaintiff.''

Judgment was entered in favor of the defendant and the plaintiff appealed. The sole question here involved is whether or not the evidence is sufficient to warrant reformation of the deed on the ground of mistake.

This court has recently dealt with the principles of law applicable in a case of this kind. See Schillinger v. Huber, 133 Mont. 80, 320 Pac. (2d) 346; Voyta v. Clonts, 134 Mont. 156, 328 Pac. (2d) 655, and cases cited therein.

Comparing the proof here with the rules laid down in Sullivan v. Marsh, 124 Mont. 415, 225 Pac. (2d) 868, we find that the parties had come to a complete and mutual understanding when the contract for deed was executed.

The district court found, as hereinbefore set out, that no clear ██ and convincing proof was produced that it was the intent of the parties to include the mineral reservation in the contract for deed. But it must be remembered that this was not an issue before the district court, the terms of the contract for deed including the mineral reservation having been pleaded by the plaintiff in her complaint and admitted by the defendant in her answer. As was said in O'Brien v. Drinkenberg, 41 Mont. 538, 544, 111 Pac. 137, 139, ''There was not any issue made by the pleadings, and it is elementary that the court cannot go outside the issues made and make findings upon questions not in dispute. Dutro v. Kennedy, 9 Mont. 101, 22 Pac. 763; Harris v. Lloyd, 11 Mont. 390, 28 Pac. 736, 28 Am. St. Rep. 475.''

We start then with this prior understanding of the parties as evidenced by the contract for deed, which provided upon payment in full being made, a deed was to be delivered, and in

carrying out the contract for deed by execution of the warranty deed, a mistake occurs, the mistake in this action being the omission from the warranty deed of the reservation clause required to be contained therein by the provisions of the contract for deed. This was the fault sought to be corrected, because the warranty deed as executed did not reflect the actual and true understanding of the parties as evidenced by the contract for deed.

We stated in Voyta v. Clonts, supra [328 Pac. (2d) 661]: "However, in order to reform a contract on the ground of mutual mistake, the evidence of the mistake must be clear, convincing and satisfactory."

In this cause the contract for deed was clear that the warranty deed to be executed was to contain the reservation. It is clear that the warranty deed did not contain the reservation. The proof discloses without question that when the mistake was discovered the plaintiff sought out the defendant in order to have the mistake corrected, and it would appear from a fair interpretation of the testimony, as supported by the letters introduced in evidence, that the defendant when apprised of the error was agreeable to making such adjustment, but upon reflection changed her mind. It is not the purpose of equity to make a new contract for the parties, but here plaintiff has asked to have enforced an already existing one.

To our mind, the evidence in this case is clear, convincing and satisfactory as to the mistake and there is no credible evidence to refute it.

"We are considering an appeal in equity. This requires that we review 'all questions of fact arising upon the evidence presented in the record, whether the same be presented by specification of particulars in which the evidence is alleged to be insufficient or not, and determine the same,' unless new trial or further hearing be ordered in the court below. R.C.M. 1947, sec. 93-216. Bond v. Birk, 126 Mont. 250, 264, 265, 247 Pac. (2d) 199; Bradbury v. Nagelhus, 132 Mont. 417, 319 Pac. (2d)

503.'' Platts v. Platts, 134 Mont. 474, 334 Pac. (2d) 722, 727.

The plaintiff prayed for an accounting covering the delay rentals received by the defendant. The evidence here discloses that the lease was executed on July 10, 1951, and delay rental at the rate of fifty cents per acre was due on or before July 10, 1952, and each year thereafter during the life of the lease. Defendant testified that she had received such delay rental for the years 1952, 1953 and 1954. Plaintiff is entitled to one-half of the delay rentals received by the defendant in each of the years that the same were paid following the execution of the lease. The description of the lands, here involved, discloses that there are two lots contained therein, but the proof fails to disclose the acreage of such lots, and since the delay rentals are dependent upon acreage, it is not possible for this court to ascertain exactly what the correct amount of delay rental is, and for that reason the case must be remanded for further proceedings with regard thereto.

For the reasons herein stated the cause is remanded to the district court with instructions to enter a proper judgment reforming the warranty deed to include therein the mineral reservation, and to take further testimony as to the acreage and delay rental feature, ascertain the correct amount due plaintiff and enter judgment in her favor therefor. It is so ordered.

MR. JUSTICES BOTTOMLY, ADAIR, ANGSTMAN and CASTLES concur.