405 P.2d 417

**BEEHIVE SECURITY THRIFT & LOAN, a Utah corporation, Plaintiff and Appellant,**

v.

**John T. HYDE and Mary C. Hyde, his wife, Kermit R. Eskelson, Larson Painting Company, and United States of America, Defendants and Respondents.**

No. 10232.

Supreme Court of Utah.

Sept. 8, 1965.

6. See Watkins v. Simonds, 14 Utah 2d 406, 385 P.2d 154; and Bennett Leasing Company v. Ellison et al., 15 Utah 2d 72, 387 P.2d 246.

William G. Fowler, Salt Lake City, for appellant.

J. Reed Tuft, John G. Marshall, Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiff, a licensed industrial loan corporation, brought this action for the unpaid balance due upon a promissory note and for foreclosure of a real estate mortgage given as security therefor. Defendants counterclaimed, asserting the loan to be usurious. The lower court found the note to be in default and the mortgage subject to foreclosure. It also found the loan to be a usurious transaction and that the defendants were entitled to a set-off against the

balance unpaid under the terms of the note. From a judgment entered accordingly, plaintiff appeals.

The face amount of the note involved is in the sum of $7,128 which represents: $5,000 in cash advanced to defendants; $484.71, premium for "credit-life" insurance; $20 for recording fees; $20 as a "setting-up charge;" and $1,603.29, discounted interest. Payments totaling $694 were made upon the note prior to the commencement of this action.

At pretrial, the court below ruled that the loan was usurious, and that an industrial loan corporation could not charge interest on loans in excess of $5,000. Applying the facts to 15-1-7, U.C.A.1953,[1] the court determined that of the amount paid upon the note ($694), the sum of $539.24 was to be applied to principal and the balance ($154.76) to interest. It then trebled the latter figure, which then amounted to $464.28, added thereto $141 as an attorney fee and came up with a set-off in favor of defendants in the sum of $1,144.52. Based upon the foregoing calculations, a money judgment for $3,855.48 was awarded to plaintiff.

Our general statute governing interest[2] prohibits an agreement for a rate of interest in excess of 10% per annum. There are certain statutory exemptions or exceptions to this limitation, one of which applies to the interest rate which may be charged by licensesd industrial loan corporations. 7-8-3, U.C.A.1953[3] provides:

> Every industrial loan corporation shall have the power * * *
> (b) To charge interest for the full term of the loan computed on the original amount of the loan (excluding charges) at the rate of 1% or less per month on that part of the loan not in excess of $2,000.00 and at the rate of ¾ of 1% per month on that part of the loan in excess of $2,000.00, but not in excess of $5,000.00, without regard to any requirements for installment payments * * *.

It must be recognized, as do the parties hereto, that an industrial loan corporation may, if not prohibited by the size of its capital and surplus,[4] make a loan to an individual in excess of $5,000. The difficulty arises as to the amount of interest which may be charged in such a case. Defendants contend, in support of their usury claim, that such a loan could only bear interest at a rate permitted by 15-1-2, U.C.A. 1953 (10% or less per annum). Plaintiff,

1. Provides for a forfeiture of all interest agreed to be paid under a usurious obligation and the right of the debtor to collect three times the amount of the interest paid, plus reasonable attorney fees.
2. 15-1-2, U.C.A.1953.

3. As amended by Laws of Utah 1955, Ch. 9, § 1.
4. 7-8-5, 1953, as amended by Laws of Utah 1955, Ch. 9, § 1.

on the other hand, argues that it may make a loan for more than $5,000, charge the advantageous rates permitted under 7–8–3, U.C.A.1953 upon the first $5,000 and 10% or less upon the excess—in which event the instant loan would not be usurious. We agree with defendants.

Our legislature, in enacting the Industrial Loan Act,[5] evidently realized the problem of a class of potential borrowers whose credit needs did not exceed $5,000, but who were unable, because of inadequate security or other reason, to secure loans through normal lending institutions. To protect this class against exorbitant interest rates charged by illicit lenders, and to encourage the extension of credit to those within that class, the legislature authorized the formation of supervised industrial loan corporations with the right to charge higher, but restricted, interest rates than those allowed generally. This higher interest rate is to compensate these corporations for the potentially higher risk involved.

■ To permit an industrial loan corporation to make a loan in excess of $5,000, charge the higher rate of interest on $5,000 and 10% or less upon the amount exceeding that amount, would be a circumvention of the design of the legislature. It would enable such a corporation to extend credit to borrowers outside the designated class and exact an interest rate greater than that permitted by banks, savings and loan associations, and other lending institutions.

■ The argument of plaintiff that the interest rates permitted to industrial loan corporations are supplemental is without merit. The transaction here involved is indivisible; either it is within the limitations, regarding interest, of 7–8–3 or those of 15–1–2, U.C.A.1953. Inasmuch as the loan is for more than $5,000, the latter section controls and prohibits an interest charge in excess of 10% per annum.

Even though the transaction were usurious, plaintiff argues that defendants cannot recover on their counterclaim because (1) the payments made must be allotted to principal and, therefore, no interest was paid which could be trebled; and (2) the transaction occurred more than two years prior to their filing of the counterclaim.[6]

■ As to (1), it is plaintiff's position that no interest could have been paid until the entire principal was first paid in full.[7] This is not tenable. The face amount of

5. Ch. 8, Title 7, U.C.A.1953.
6. 15–1–7, U.C.A.1953 provides that an action for treble the amount of interest paid must be "commenced within two years from the time the usurious transaction occurred."

7. Plaintiff cites McBroom v. Scottish Mtge. & Land Inv. Co., 153 U.S. 318, 14 S.Ct. 852, 38 L.Ed. 729 (1894). This case interpreted a New Mexico statute substantially different from the Utah statute under consideration.

the note included interest as well as principal. A payment made upon the note would necessarily be one upon both. The borrower is under obligation to pay the note in full, regardless of the items which were combined in ascertaining the face amount.

, As against the contention that no interest can be paid until the principal is retired, it would be just as logical to argue that the usurious interest was paid at the time the note, which included the reserved interest, was executed. The United States Supreme Court has considered this problem arising under a statute[8] similar to ours. In McCarthy v. First National Bank,[9] that court states:

> * * * Banks may make ordinary loans and charge interest to be collected at the maturity of the note. But, as they usually reserve and deduct it in advance, by way of discount, the statute is framed so as to apply to cases where the interest is paid by the debtor as well as to those in which it is reserved by the bank. These deductions by way of discount are not treated as payments. They do not come out of the debtor's pocket, though they lessen the amount which he receives when the loan is made, and when sued he may plead usury and escape liability

for the amount thus charged or retained. But such reservation by the bank, not being a payment made by the debtor, he, of course, cannot avail himself of the right to maintain a suit given only to those who have paid interest.

> But when the debtor actually makes a payment, as interest, and the bank knowingly receives and appropriates it as such, the usurious transaction is complete, the right of the one and the liability of the other is fixed, the cause of action arises, and the statute of limitations begins to run. * * *

 With respect to (2), we are of the opinion that the limitation period commences to run from the time each payment of interest is made, i. e., each separate payment of interest constitutes the date that "the usurious transaction occurred." However, the proposition is moot in the instant case. The record does not disclose the dates upon which the payments were made. The note bears the date of April 18, 1961, and plaintiff filed its action on February 13, 1963. Therefore, the payments were made within a period less than two years prior to the commencement of this action. The fact that the counter-

8. 12 U.S.C.A. § 86, R.S. 5198.

9. 223 U.S. 493, 32 S.Ct. 240, 56 L.Ed. 523 (1912).

claim was not filed until January 21, 1964, is not of controlling significance. A counterclaim based upon a cause of action which is not barred at the time of the commencement of the plaintiff's action is not barred thereafter because it is not pleaded before the expiration of the full statutory time.[10] Defendants' counterclaim is, therefore, not barred by the two-year limitation period.

The lower court, in computing the amount of the set-off to be allowed defendants inadvertently derived the nominal interest which rate it applied in determining the amount of interest which should be trebled and deducted the trebled amount from $5,000. It should have used an actual interest rate and deducted the trebled interest, thus computed, from the principal amount of the debt, i. e., $5,524.71.

Rather than $1,144.52, as allowed by the court below, the off-set allowed defendants should be $1,234.80. and the judgment $4,289.81.

Remanded with instructions to enter a judgment in an amount coinciding with the foregoing. Otherwise, affirmed. Costs to defendants.

HENRIOD, C. J., and McDONOUGH, CROCKETT, and WADE, JJ., concur.

10. Lewis v. Merrill, 228 Or. 541, 365 P.2d 1052 (1961).