**DOXEY–LAYTON COMPANY, a corporation, et al., Plaintiffs and Appellants,**

v.

**Vendetta CLARK et al., Defendants and Respondents.**

**No. 14097.**

Supreme Court of Utah.

April 13, 1976.

Gaylen S. Young, Jr., of Spafford & Young, Salt Lake City, for plaintiffs and appellants.

George E. Mangan, Roosevelt, for Ralphs.

Gregory P. Williams, Salt Lake City, for Chevron.

MAUGHAN, Justice:

Before us is an appeal of the judgment of the district court reforming a warranty deed, because of a scrivener's mistake; quieting title to an undivided 25 per cent interest of the mineral estate, in plaintiffs; quieting title to an undivided 75 per cent interest of the mineral estate, in defendant individuals; and sustaining the leasehold interest of Chevron Oil Company in the entire mineral estate. We affirm.

Plaintiffs advance three points on appeal: (1) That the individual defendant's claim of mistake was barred by a statute of limitation, and that the doctrine of estoppel in pais was not applicable to plaintiffs; (2) That some of the findings and conclusions were based upon hearsay evidence; (3) It was error to hold that plaintiffs could not terminate a leasehold interest of Chevron. These points are dealt with seriatim.

Plaintiffs brought an action to quiet title to a 75 per cent interest in the mineral rights in some property located in Duchesne County; and to have the mineral lease of Chevron terminated.

Plaintiffs claim through a warranty deed, dated August 13, 1963, recorded May 5, 1970. In that deed William and Bertha Ralphs, husband and wife, conveyed the property to K. C. Ranches, Inc.

Under a uniform real estate contract, dated September 7, 1962, William A. and Bertha Ralphs, as sellers, sold the subject land to Hank and Donna Swain, as buyers; expressly reserving 75 per cent of all oil, gas, and mineral rights, and excepting from the obligation to convey, a lease then in existence. The Swains assigned whatever interest they had in this contract to K. C. Ranches, Inc., in August of 1963. In that same month the Ralphs conveyed the subject property to K. C. Ranches, Inc., by warranty deed. This deed contained no reservation of 75 per cent of the mineral rights provided for in the real estate contract. This was the mistake defendants alleged in their answer, and the one the court reformed the deed to rectify. In addition, the deed of August 13, 1963, does not reflect a conveyance of water shares, described in the uniform real estate contract; nor does the record show a conveyance of shares by an independent instrument.

Defendants also filed a counterclaim in which they prayed for an order requiring plaintiffs to quitclaim to them 75 per cent of the mineral rights. The counterclaim also alleged that an employee of Doxey-Layton Company embezzled funds to purchase the interest acquired by K. C. Ranches, Inc. (The employee was the wife of one of the principals in K. C. Ranches.) Upon discovery of these defalcations, Doxey-Layton received an assignment of all K. C. Ranches' interest in the subject property. The defendants also alleged that the plaintiffs knew of the error in the warranty deed, and that said deed did not reflect the terms of the contract, which showed the defendants to have parted with only 25 per cent of their interest in the oil, gas, and mineral rights.

The Uniform Real Estate Contract of September 7, 1962, between Ralphs and Swains, after describing, by metes and bounds, the realty to be conveyed, also listed other potential conveyances, two of which are pertinent here:

> 130 shares of the capital stock of the Dry Gulch Irrigation Company. Together with Class "A" stock

> .    .    .    .    .    .

> Together with an undivided 25% of oil, gas and mineral rights but excepting therefrom a lease now in existence.

At the time the Swains assigned their interest in the contract to K. C. Ranches (August 1963), an error in the legal description was discovered; viz., the West one half of the Northeast quarter, in Section 1, should have read the West one half of the Southeast quarter. To rectify this, an amendment to the Uniform Real Estate Contract was executed by William and Bertha Ralphs and K. C. Ranches, at the latter's request. This amendment was in writing and it stated: the contract contained an erroneous legal description, the contract had been assigned, and the parties desired to amend the legal description; it further said:

> 2. WITNESSETH: That the seller, for the consideration herein mentioned agrees to sell and convey to the buyer, and the buyer for the consideration herein mentioned agrees to purchase the following described real property, situate in the County of Duchesne, State of Utah, to wit: [Here the corrected description is made.]

> Except as herein modified, all remaining terms, conditions and provisions of said uniform real estate contract shall remain in full force and effect.

Neither the water rights nor the mineral rights were included in this description, or in the subsequent assignment by K. C.

Ranches to Doxey-Layton. However, when Doxey-Layton conveyed the surface rights by warranty deed to the McConkies, in 1970, the water rights included in the description in the original Uniform Real Estate Contract were included.

At the time the Ralphs executed the amendment to the contract, they were also requested to execute the warranty deed; through which plaintiffs on appeal claim 100 per cent of the mineral rights. The Ralphs were elderly people, and in company with a realtor friend of theirs, a Mr. Gardner, met with Mr. Bennett, the principal of K. C. Ranches. Mr. Gardner read the documents aloud to the Ralphs, and Mr. Bennett assured everyone the only change was in the erroneous legal description, with which Mr. Gardner agreed. The deed had been prepared in Roosevelt, Utah, by an attorney representing the realtor who had sold the property to K. C. Ranches.

Upon execution of the deed, August 13, 1963, it was deposited in an escrow account, to await performance of the obligations precedent to delivery. In September 1965, the Ralphs granted a ten-year lease of the oil rights to Chevron. At that time the Ralphs were record owners of 100 per cent of the mineral rights. On May 15, 1970, after the obligations of the contract were fulfilled by Doxey-Layton, the deed was delivered and recorded. On this same day, Doxey-Layton conveyed the surface rights, and the water shares, by warranty deed to McConkies. In November 1971, William A. Ralphs recorded an affidavit of interest in which he gave record notice that the deed was in error, viz., that it did not reserve 75 per cent of the oil, gas, and mineral interests.

The action resulting in this appeal was filed January 22, 1973, against William A. and Bertha Ralphs, their son Dennis Ralphs, and Chevron Oil Company. Chevron answered February 20, 1973, and alleged that William A. and Bertha Ralphs had died prior to the commencement of the action, and pleaded that the representatives or heirs of the decedents be joined as parties. Plaintiffs responded with an amended complaint in which they admitted the Ralphs were dead, but failed to join their heirs or representatives. The attorney representing Ralphs, including Dennis Ralphs, who had been a party in both the complaint and amended complaint, delayed answering since he had been informed the other named heirs would be joined, and he agreed to accept service on behalf of all of them. Receiving no pleading joining the other named heirs, on June 12, 1973, defendants filed their answer and counterclaim, pleading that the other heirs be made parties to the action. On June 19, 1973, plaintiffs filed a second amended complaint, which included the heirs as parties; together with a reply to the counterclaim. On June 29, 1973, plaintiffs filed a motion for substitution of parties, requesting the heirs be substituted for defendants William A. and Bertha Ralphs.

On these facts plaintiffs raise the three points on appeal, the first of which is that reformation cannot be had because the claim of mistake is barred by the statute of limitations.[1] This statute allows an action to be brought on the ground of fraud or mistake within three years, but provides the cause shall not be deemed to have accrued until the aggrieved party discovers the facts constituting fraud or mistake. Plaintiffs claim the statute began to run as of the date of execution, viz., August 13, 1963, rather than from the date of delivery—the termination of the escrow.

█ A deed in escrow, under a conditional sales contract, is effective as a conveyance after performance of the contract obligations, and upon delivery by the depositary. Except for unusual circumstances (those which would create a shocking injustice) which the court does not find present herein, the date of delivery of the deed does not relate back to the date of execution of the deed, or the commence-

1. 78-12-26(3), U.C.A.1953.

ment of the escrow period.[2] Thus, in this matter, the limitation period to reform the deed did not commence to run until May 15, 1970.

Plaintiffs make a second thrust with the statute of limitations, by contending that the substitution of parties and filing of the counterclaim do not relate back to the filing of the complaint; and are therefore barred.[3] The facts claimed to support this second thrust are that plaintiffs' action was filed on January 22, 1973, defendants' answer and counterclaim were filed June 12, 1973; and, except for Dennis Ralphs, the heirs were not joined as parties until June 19, 1973.

■ Generally Rule 15(c), U.R.C.P., will not apply to an amendment which substitutes or adds new parties for those brought before the court by the original pleadings—whether plaintiff or defendant. This for the reason that such would amount to the assertion of a new cause of action, and if such were allowed to relate back to the filing of the complaint, the purpose of a statute of limitation would be defeated.

■ There is an exception to this rule. The exception operates where there is a relation back, as to both plaintiff and defendant, when new and old parties have an identity of interest; so it can be assumed or proved the relation back is not prejudicial. The rationale underpinning this exception is one which obstructs a mechanical use of a statute of limitations; to prevent adjudication of a claim. Such is particularly valid where, as here, the real parties in interest were sufficiently alerted to the proceedings, or were involved in them unofficially, from an early stage. Courts have also allowed

amendments to relate back, by invoking an estoppel where an initial pleading error has been exploited until the running of the statute of limitations.[4] The trial court properly ruled that the amended pleading joining the heirs of William and Bertha Ralphs related back to the date of the filing of the original complaint.

■ Plaintiffs make a third thrust with the statute of limitations; contending the filing of the counterclaim was thereby barred. In ruling it was not, the trial court correctly followed the majority rule. That rule is that a counterclaim which arises out of the transaction alleged in the complaint and is in existence, at the time the complaint is filed, and is not then barred by a statute of limitations, will not be barred by a running of the statutory time thereafter. The statute will be suspended until the counterclaim is filed.[5]

■ Plaintiffs make a further contention. They challenge the evidence, as insufficient to sustain findings, there was a scrivener's mistake; and that it was the intention of the parties, to the amended contract, to reserve to the sellers 75 per cent mineral interest. This claim is based primarily on the testimony of Mr. Gardner relating what Mr. Bennett said to Mr. Ralphs, when Mr. Bennett was not before the court. Such is hearsay, but whatever value it may have, it is not necessary to sustain the judgment of the trial court. Ample, additional evidence, reviewed herein, is sufficient to sustain that judgment. Of particular interest is the amendment to the Uniform Real Estate Contract, correcting the description; and the inclusion of the shares of water stock on a subse-

2. *Anderson v. Anderson*, 15 Utah 2d 7, 386 P.2d 406 (1963); *Blumenthal v. Liebman*, 109 Cal.App.2d 374, 240 P.2d 699 (1952); 28 Am.Jur.2d, Escrow, Section 10.

3. 78–12–26(3), U.C.A.1953.

4. 3 Moore's Federal Practice, Section 15.15 [4–1] pp. 1041–47; also see 8 A.L.R.2d 6, Anno: Change in Party After Statute of Limitations Has Run, Section 90, p. 187: Amendments substituting the proper parties

defendant have been given effect in cases involving property acquired under a will or by inheritance, even if made after the statute of limitations has barred the original cause of action.

5. *Beehive Security Thrift & Loan v. Hyde*, 17 Utah 2d 130, 405 P.2d 417 (1965); *Lewis v. Merrill*, 228 Or. 541, 365 P.2d 1052, 1054–1055 (1961); 3 Moore's Federal Practice, Section 13.11, p. 13.245.

quent conveyance, contrary to the amendment. In *Naisbitt v. Hodges* [6] we said:

. . . in an equity review of what is "clear and convincing" evidence necessary to reform a deed. All that is required is that evidence exists whereby this court can say that the trial judge acted as a reasonable man in finding that the proof of the fact asserted is greater than a mere preponderance. . . .

We think that such evidence existed here.

In the matter of *Thompson v. Bantz*, [7] which bears a strong factual similarity to the instant action, the issue was the same, viz., whether the evidence was sufficient to warrant reformation of a deed on the ground of mistake. The court there said:

We start then with this prior understanding of the parties as evidenced by the contract for deed, which provided upon payment in full being made, a deed was to be delivered, and in carrying out the contract for deed by the execution of the warranty deed, a mistake occurs, the mistake in this action being the omission from the warranty deed of the reservation clause required to be contained therein by the provisions of the contract for deed. This was the fault sought to be corrected, because the warranty deed as executed did not reflect the actual and true understanding of the parties as evidenced by the contract for deed. . . . In this cause the contract for deed was clear that the warranty deed to be executed was to contain the reservation. It is clear that the warranty deed did not contain the reservation. . . . It is not the purpose of equity to make a new contract for the parties, but here plaintiff has asked to have enforced an already existing one. To our mind, the evidence in this case is clear, convincing

6. 6 Utah 2d 116, 122, 307 P.2d 620, 985 (1957).

7. 136 Mont. 210, 346 P.2d 982, 985–986 (1959).

8. Also see *Phillips v. Pitts*, 33 Wash.2d 541, 206 P.2d 275 (1949), wherein the court em-

and satisfactory as to the mistake and there is no credible evidence to refute it.[8]

We are of the opinion that the instant matter is controlled by the same rationale.

■ Plaintiffs' final contention is that they are entitled to terminate the Chevron lease. This lease was for a ten-year term, and was granted by William and Bertha Ralphs, September 23, 1965. Plaintiffs charge bad faith on the part of Chevron, to justify termination of the lease. The bad faith is said to be the continuing payments Chevron made to Ralphs after Chevron received actual notice of the unrecorded deed of August 13, 1963, on or about April 21, 1967; and ignored that notice.

We have said that prior to May 15, 1970, the warranty deed had not been delivered and was not effective as a conveyance. Therefore it was not an act of bad faith for Chevron to request record proof of plaintiffs' interest.

TUCKETT, J., concurs.

ELLETT, J., concurs in the result.

CROCKETT, Justice (dissenting) :

There are two major obstacles to my voting to affirm the judgment.

First, the only way that the 1963 deed could be reformed to include a reservation of mineral rights would be to prove a mutual mistake of fact by clear and convincing evidence. The evidence on that matter consists to a large extent of the testimony of Mr. Max Gardner, who was a personal friend and acted as real estate broker for the grantors, William and Bertha Ralphs. It contained considerable hearsay as to what Mr. Carl Bennett, who it is said represented K. C. Ranches, Inc., and William

phasized that it was not asked to reform a writing to conform to an oral agreement, but to reform a warranty deed with an unexplained omission of a reservation. There the court observed that the variance between the contract and the deed was apparent and hence clear, cogent and convincing.

A. and Bertha Ralphs, said and what they intended concerning the transaction. It seems to be conceded (and it must be) that this testimony is hearsay; and I do not see that it comes under any exception to the hearsay rule.

It is nowhere pointed out, nor do I find any answer, to this charge in the appellants' brief:

> Without this improper and hearsay evidence of Max Gardner, there is really nothing in the record to substantiate a mistake, or [to show] that it was in fact the intention of William and Bertha Ralphs to reserve the minerals in their deed to K. C. Ranches of August 13, 1963.

It is true that considerable latitude must be allowed to the trial court in determining whether he believes the evidence is clear and convincing. But if he admits incompetent evidence over objection, how is a reviewing court to tell whether he was convinced by the incompetent evidence, or by whatever competent evidence there may be to support the finding? This is especially true here in view of the paucity of proof, other than the incompetent evidence, to support the finding of mistake.

Second, despite the defendants' contention that the statute of limitations did not begin to run until the end of the escrow and the deed was released in 1970, the real test is knowledge. That is, the statute of limitations begins to run against a party claiming mistake when he knows, or when he learns of the facts which he contends constitute the mistake.[1] The generally accepted rule, which has a sound basis in reason and experience, is that a grantor is presumed to have knowledge of the contents of the deed he executes, unless it is shown that the grantee is guilty of some misrepresentation, concealment or deceit as to its contents.[2] No claim has been made here that the original grantees, the Swains, so misled or deceived the Ralphs when the latter executed the deed in 1963. Therefore, I do not perceive why the statute did not then begin to run against the Ralphs (and their successors in interest who stand in their shoes) at that time, almost ten years before this action was commenced.

In accordance with what has been said above, I am unable to see justification for affirming the decree reforming the deed. Alternatively, there should at the very least be a new trial excluding the incompetent testimony, and have a determination of the issue solely on competent evidence: whether it is clear and convincing that there was a mistake made in the deed.

HENRIOD, C. J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.

---

1. Section 78–12–26, U.C.A.1953, states: "Within three years: . . . (3) An action for relief on the ground of fraud or mistake; but the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

2. *McKellar v. McKellar*, 23 Utah 2d 106, 458 P.2d 867 (1969); *Hjermstad v. Barkuloo*, 128 Mont. 88, 270 P.2d 1112 (1954).