2002 UT App 247

**Silvia NUÑEZ, Plaintiff and Appellant,**

v.

**Dominic ALBO, M.D., Defendant and Appellee.**

No. 20010037–CA.

Court of Appeals of Utah.

July 18, 2002.

Loren M. Lambert, Arrow Legal Solutions, Midvale, and David R. Olsen and Paul M. Simmons, Dewsnup King & Olsen, Salt Lake City, for Appellant.

Brian P. Miller, David G. Williams, and Kenneth L. Reich, Snow Christensen & Martineau, Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and ORME.

## OPINION

### GREENWOOD, Judge:

¶ 1 Silvia Nuñez brought a medical malpractice action as a result of treatment she received for telangiectasia (spider veins) by Dr. Dominic Albo. Dr. Albo moved for summary judgment based on his personal immunity under the Utah Governmental Immunity Act (the Immunity Act). Ms. Nuñez filed a motion to amend her complaint. The trial court granted Dr. Albo's motion for summary judgment and denied Ms. Nuñez's motion to amend. Ms. Nuñez appeals. We affirm the grant of summary judgment, but reverse the denial of Ms. Nuñez's motion to amend.

### BACKGROUND

¶ 2 Dr. Albo is a general surgeon, with a special emphasis in varicose vein treatment, and has been employed as a faculty member at the University of Utah's School of Medicine (the University) in the Department of Surgery since July 1968. As a University faculty member, Dr. Albo must maintain a clinical practice as a condition of his employment. The University pays for Dr. Albo's clinic, medical supplies, and medications used in his treatment of patients. All billings and collections for Dr. Albo's medical services are handled by the University. Dr. Albo does not receive direct compensation for his medical practice, but instead receives a salary from the University.

¶ 3 On May 8 and 20, 1998, Dr. Albo treated Ms. Nuñez for spider veins in her legs at his clinic located near the Salt Lake Regional Medical Center (SLRMC) during regular business hours. Ms. Nuñez's treatment consisted of injection sclerotherapy. Prior to treatment, Ms. Nuñez signed both a consent form describing the potential complications associated with injection sclerotherapy and an acknowledgment form stating she understood that Dr. Albo was an employee of the University and subject to the provisions of the Immunity Act. Ms. Nuñez alleged that as a result of the injection sclerotherapy treatment, she suffered complications consisting of brown spots, ulcers, hyper-pigmentation, and severe scarring on her legs. On

or about January 6, 1999, Ms. Nuñez sent a notice of claim to Dr. Albo and to the Utah Attorney General pursuant to the Utah Health Care Malpractice Act (the Malpractice Act), Utah Code Ann. §§ 78–14–1 to –16 (1996).

¶4 On February 16, 1999, the Director of the University of Utah Hospital and Clinic's Risk Management Department (Risk Management) responded to Ms. Nuñez's notice of claim letter, asking her to refrain from contacting Dr. Albo and to direct future communication to either Lynda P. Faldmo of Risk Management or David G. Williams, Dr. Albo's counsel.

¶5 After complying with the prelitigation requirements of the Malpractice Act, Ms. Nuñez filed an action against Dr. Albo, claiming he had breached the applicable standard of care in treating her and failed to obtain her informed consent for treatment. Dr. Albo filed a motion for summary judgment, claiming that he is immune from personal liability under the Immunity Act because he is an employee of the University, and that his care and treatment of Ms. Nuñez were within the course and scope of that employment. Ms. Nuñez filed a motion for leave to amend her complaint to name the University and its medical school as defendants. Ms. Nuñez sought leave to amend in the event the trial court agreed with Dr. Albo that he was not personally liable for her injuries. Until this time, Ms. Nuñez had alleged that Dr. Albo was acting outside the scope of his employment, and therefore, was personally liable.

¶6 The trial court granted Dr. Albo's motion for summary judgment, ruling that Dr. Albo's treatment of Ms. Nuñez was performed in his capacity as an employee of the University and within the scope of that employment. The trial court denied Ms. Nuñez's motion to amend, ruling that she had failed to comply with the express provisions of the Immunity Act and that such failure prevented any claims from being asserted against the University. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶7 Ms. Nuñez argues: (1) genuine issues of material fact exist as to whether Dr. Albo was acting within the scope of his employment when he treated her; (2) she gave proper notice of her claim against the University under the Immunity Act; and (3) the trial court exceeded its discretion by denying her motion to amend.

¶8 When reviewing whether summary judgment is appropriate, "this Court will view the facts in a light most favorable to the party opposing the motion and will allow the summary judgment to stand only if the movant is entitled to summary judgment as a matter of law on the undisputed facts." *Deschamps v. Pulley,* 784 P.2d 471, 472 (Utah Ct.App.1989) (quotation and citations omitted). Thus, we review the evidence in a light most favorable to Ms. Nuñez. *See id.*

¶9 Interpretation of the Immunity Act is a "question of law which we review for correctness, granting no deference to the trial court's determinations." *Bellonio v. Salt Lake City Corp.,* 911 P.2d 1294, 1296 (Utah Ct.App.1996) (citing *Brittain v. State,* 882 P.2d 666, 668 (Utah Ct.App.1994)).

¶10 Whether to grant or deny a motion to amend is "a matter within the broad discretion of the trial court and we [will not] disturb its ruling unless [Ms. Nuñez] establishes an abuse of discretion resulting in prejudice." *Chadwick v. Nielsen,* 763 P.2d 817, 820 (Utah Ct.App.1988).

## ANALYSIS

### I. Scope of Employment

¶11 Ms. Nuñez argues that the trial court erred in granting Dr. Albo's motion for summary judgment because there are genuine issues of material fact as to whether Dr. Albo was acting within the scope of his employment with the University when he treated her. Generally, this issue presents a question of fact to be determined by a jury. *See Birkner v. Salt Lake County,* 771 P.2d 1053, 1057 (Utah 1989). Therefore, summary judgment is appropriate only if the undisputed facts render the resolution so clear it can be decided as a matter of law. *Id.*

¶12 Utah courts apply a three-part test for determining whether an employee

was acting within the scope of his employment. An employee's conduct falls within the scope of his employment if,

> First, ... [the] conduct [is] of the general kind the employee is employed to perform.... That means that an employee's acts or conduct must be generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto....
>
> Second, the employee's conduct ... occur[s] within the hours of the employee's work and the ordinary spatial boundaries of the employment....
>
> Third, the employee's conduct [is] motivated, at least in part, by the purpose of serving the employer's interest.

*Id.* at 1056–57 (citations omitted). We examine each element in light of the evidence that Dr. Albo presented, which Ms. Nuñez did not dispute.

¶ 13 First, Dr. Albo's treatment of Ms. Nuñez was "directed toward the accomplishment of objectives within the scope of [his] duties and authority." *Id.* at 1057. Dr. Albo has been employed as a faculty member and general surgeon at the medical school in the Department of Surgery since July 1968. He has a special emphasis in treating varicose veins. As a condition of his employment, Dr. Albo is expected to, and does, maintain a clinical practice. Ms. Nuñez went to Dr. Albo's clinic seeking treatment for spider veins in her legs, a treatment of the general kind and nature that Dr. Albo has been employed to perform. Therefore, the first element is established because Dr. Albo's treatment of Ms. Nuñez was of the type he was employed to perform.

¶ 14 Second, Dr. Albo's conduct "occur[red] within the hours of [his] work and the ordinary spatial boundaries of employment." *Id.* Dr. Albo treated Ms. Nuñez during regular business hours at his clinic paid for by the University. Because Dr. Albo is a faculty member, the University paid the costs of his clinic where Ms. Nuñez received treatment along with the medical supplies and medications used in her treatment. All billings and collections for Dr. Albo's medical services are handled by the University. Although Ms. Nuñez paid cash for the treatment, this payment was forwarded in full to the University. Dr. Albo does not receive direct compensation for his medical practice; instead, Dr. Albo's sole compensation is a salary from the University. Because Dr. Albo's treatment of Ms. Nuñez "occurred within the hours of [his] work and the ordinary spatial boundaries of employment," the second element is established.

¶ 15 Finally, Dr. Albo's treatment of Ms. Nuñez was motivated "by the purpose of serving the [University's] interest." *Id.* In educating and training students, interns, residents and fellows (students) in medicine and health sciences, the University arranges for students to provide health care services to members of the public in approved medical or other health care clinical training programs at the University and its affiliated clinics. Faculty members are expected to develop and maintain an appropriately mixed patient base to enable the University to adequately teach and train students in all phases of health care science, including patient care and research.

¶ 16 Witnesses for Dr. Albo testified, by affidavit or deposition, that costs associated with a medical school are high and include attracting and retaining qualified faculty, providing research space and equipment, and providing adequate clinical space and experiences for students. Because of the high costs associated with maintaining a medical school, the University cannot afford to pay faculty what they could earn in private practice. As a result, the personal immunity and other benefits available at the University by virtue of its status as a state institution are critical for the University to attract and retain qualified faculty members and thereby maintain a level of excellence.

¶ 17 Dr. Albo's treatment of Ms. Nuñez and other patients like her is part of his employment with the University. Although there were no students observing or assisting in the treatment of Ms. Nuñez, Dr. Albo's treatment of Ms. Nuñez clearly served the University's interests.

¶ 18 In sum, Dr. Albo's treatment of Ms. Nuñez was of the type he was employed to

perform, was within the hours and spatial boundaries of his employment, and was motivated, at least in part, by serving the University's interests. Therefore, Dr. Albo acted within the scope of his employment as a matter of law, and the trial court properly granted Dr. Albo's motion for summary judgment.

## II. Motion to Amend

¶ 19 Ms. Nuñez argues that the trial court erred in denying her motion to amend her complaint to name the University as a defendant. Rule 15(a) of the Utah Rules of Civil Procedure directs that leave to amend pleadings "shall be freely given when justice so requires." Utah R. Civ. P. 15(a). It is well established that " 'rule 15 should be interpreted liberally so as to allow parties to have their claims fully adjudicated.' " *Sulzen v. Williams*, 1999 UT App 76, ¶ 13, 977 P.2d 497 (quoting *Timm v. Dewsnup*, 851 P.2d 1178, 1183 (Utah 1993)). This is especially true when the motion to amend is made well in advance of trial. *See Lewis v. Moultree*, 627 P.2d 94, 98 (Utah 1981) (" 'The rule in this state has always been to allow amendments freely where justice requires, and especially is this true before trial.' " (Quoting *Gillman v. Hansen*, 26 Utah 2d 165, 486 P.2d 1045, 1046 (1971))).

¶ 20 The trial court denied Ms. Nuñez's motion to amend, reasoning that (1) joining the University would be futile due to Ms. Nuñez's failure to comply with the Immunity Act's notice of claim requirements; and (2) justice would not be served by allowing the amendment because Ms. Nuñez had unjustifiably delayed attempting to join the University, her motion came late in the litigation process, and granting the motion would result in prejudice to the University. We will analyze each of the trial court's reasons for denying Ms. Nuñez's motion to amend in light of rule 15's liberal standard.

### A. Adequacy of the Notice of Claim

¶ 21 We first address whether the trial court correctly determined that Ms. Nuñez failed to give proper notice of her claim against the University as required by the Immunity Act. "Utah courts have established a rule of strict compliance with the notice provisions of the Utah Governmental Immunity Act." *Bischel v. Merritt*, 907 P.2d 275, 279 (Utah Ct.App.1995). The applicable provisions of Utah's Immunity Act in effect when Ms. Nuñez's claim arose stated:

(2) Any person having a claim for injury against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.

(3)(a) The notice of claim shall set forth:

(i) a brief statement of the facts;

(ii) the nature of the claim asserted; and

(iii) the damages incurred by the claimant so far as they are known.

(b) The notice of claim shall be:

(i) signed by the person making the claim or that person's agent, attorney, parent, or legal guardian; and

(ii) directed and delivered to:

. . . .

(E) the attorney general, when the claim is against the State of Utah . . . . [1]

Utah Code Ann. § 63–30–11(2) & (3) (Supp. 2001).

A claim against the state, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the attorney general within one year after the claim arises, or before the expiration of any extension of time granted under Section 63–30–11, regardless of whether or not the

---

1. Under the act, "State" is defined as "the state of Utah," which includes "any . . . hospital, college, university, or other instrumentality of the state." Utah Code Ann. § 63–30–2(9) (Supp. 2001).

function giving rise to the claim is characterized as governmental. Utah Code Ann. § 63–30–12 (Supp.2001).[2]

¶ 22 "[W]here the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Lyon v. Burton,* 2000 UT 19,¶ 17, 5 P.3d 616 (quotations and citation omitted). We will analyze whether Ms. Nuñez's notice of claim complied with each of the requirements included in the Immunity Act.

### 1. Immunity Act Requirements

¶ 23 First, the Immunity Act requires "a brief statement of the facts." Utah Code Ann. § 63–30–11. Ms. Nuñez's notice recited that "Nuñez was a medical patient of Dr. Albo's and received a treatment for vericose [sic] veins in her legs called Sclerosis," that "injected sclerotic fluid into the veins" of her legs, and as a result of the medical procedure, Ms. Nuñez suffered complications. Second, the Immunity Act requires that "the nature of the claim be asserted." *Id.* Ms. Nuñez's notice asserted several times that the nature of her claim was for medical malpractice.

¶ 24 Third, the Immunity Act requires that "the damages incurred" be set forth. *Id.* Ms. Nuñez listed the damages she suffered as a result of Dr. Albo's treatment both in terms of physical complications suffered and compensatory damages. Fourth, the Immunity Act requires that the claim be "signed by the person making the claim or that person's . . . attorney . . . and delivered to . . . the attorney general, when the claim is against the State of Utah." *Id.* Ms. Nuñez's attorney signed and delivered the "notice of claim" to Dr. Albo and to the attorney general. Finally, the Immunity Act requires that the "notice of claim [be] filed with the attorney general within one year after the claim arises." Utah Code Ann. § 63–30–12. Ms. Nuñez filed her notice of claim with the attorney general on January 7, 1999, well within the one-year statutory time limit. Therefore, Ms. Nuñez's notice of claim strict-

ly complied with all the conditions set forth under the Immunity Act.

### 2. Sufficient Notice under the Immunity Act

¶ 25 Defendant's argument that Ms. Nuñez's notice was insufficient because it did not specifically name the University of Utah or its medical school fails for several reasons. "[T]he primary purpose of the notice of claim requirement is to afford the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of a claim and to arrive at a timely settlement, if appropriate, thereby avoiding the expenditure of public revenue for costly and unnecessary litigation." *Stahl v. Utah Transit Auth.,* 618 P.2d 480, 482 (Utah 1980). "Serving notice on the attorney general is intended to ensure that the State's legal needs are met." *Brittain v. State,* 882 P.2d 666, 671 (Utah Ct.App.1994).

¶ 26 Ms. Nuñez's notice stated that she was asserting a claim against Dr. Albo and "any others that may latter [sic] be shown to be liable." In compliance with the Immunity Act, Ms. Nuñez filed her notice of claim with the attorney general. Ms. Nuñez's notice of claim alerted the State that she intended to assert a claim based on the treatment she received from Dr. Albo. In addition, Dr. Albo forwarded a copy of the notice of claim to the University's Risk Management. In response, Risk Management wrote to Ms. Nuñez acknowledging that Dr. Albo was "an employee of the University of Utah . . . represented by counsel," and asked that all communications concerning this matter be directed either to Risk Management or to Dr. Albo's counsel of record.

¶ 27 Clearly the University was put on notice of Ms. Nuñez's claim and recognized its potential liability for Dr. Albo's treatment of Ms. Nuñez. Based on this notice, the University was free to investigate the merits of the claim and "arrive at a timely settlement, if appropriate." *Stahl,* 618 P.2d at 482. Thus, although the University was not specifically named, the purpose of the Immunity Act's notice of claim was fulfilled.

---

2. Since the 1998 amendment, section 63–30–12 no longer requires filing a notice of claim with the concerned agency. *See* Utah Code Ann. § 63–30–12 (1997).

B. Denial of the Motion to Amend

¶ 28 Having concluded that Ms. Nuñez's notice of claim complied with the statutory requirements of the Immunity Act, we next address whether the trial court exceeded its discretion in denying Ms. Nuñez leave to amend her complaint. Because the statute of limitations has expired, Ms. Nuñez's amendment, adding the University and its medical school as defendants, must relate back to the date the original complaint was filed to be effective. We also examine whether denial of the motion to amend served the interests of justice.

1. Relation Back to Original Complaint

¶ 29 Rule 15(c) of the Utah Rules of Civil Procedure provides for the relation back of amendments, stating: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R. Civ. P. 15(c). In addition, the new defendants sought to be added must have an identity of interest with the original party named in the complaint, "so it can be assumed or proved the relation back is not prejudicial." *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 369 (Utah 1996) (quotations and citation omitted). An identity of interest exists "when 'the real parties in interest were sufficiently alerted to the proceedings, or were involved in them unofficially, from an early stage.'" *Sulzen v. Williams*, 1999 UT App 76, ¶ 14, 977 P.2d 497 (quoting *Doxey–Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976)). Ms. Nuñez's proposed amendment sets forth claims against the University which "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." Utah R. Civ. P. 15(c). Therefore, Ms. Nuñez has met the requirements of rule 15(c). Under this definition, an identity of interest exists between the University and Dr. Albo.

¶ 30 We have already determined that the University had notice of Ms. Nuñez's claim. In recognizing its potential liability, the University took steps to provide counsel for Dr. Albo and required that all communications concerning Ms. Nuñez's claim be sent to the University's Risk Management attorney or to Dr. Albo's counsel. Therefore, the University was "involved in [the proceedings] unofficially from an early stage" due to their identity of interest with Dr. Albo. *Sulzen*, 1999 UT App 76 at ¶ 14, 977 P.2d 497.

2. Unjustifiable Delay, Late in Litigation Process, and Prejudice

¶ 31 Next, we address the trial court's finding that justice would not be served by allowing the amendment because Ms. Nuñez had unjustifiably delayed attempting to join the University and her motion came late in the litigation process, and granting the motion would have resulted in prejudice to the University. We believe that these findings are not consistent with a liberal interpretation of rule 15 "to allow parties to have their claims fully adjudicated." *Id.* at ¶ 13.

¶ 32 On August 25, 2000, eleven days after Dr. Albo filed his motion for summary judgment, Ms. Nuñez filed a motion for leave to amend her complaint to specifically name the University of Utah and its medical school as defendants. Ms. Nuñez sought leave to amend in the event the trial court agreed with Dr. Albo that he was not personally liable for her injuries. Until this time, Ms. Nuñez had alleged that Dr. Albo was acting outside the scope of his employment, and therefore, was personally liable. The majority of cases where Utah's appellate courts have upheld a trial court's denial of leave to amend on the grounds of untimeliness have been when the motion to amend was made several years after the original pleadings were filed and just before trial or at trial. *See e.g., R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1080 (Utah 1997) (upholding denial of motion to amend where sought four years after case commenced and trial had been held to resolve fundamental issue in the case); *Staker v. Huntington Cleveland Irrigation Co.*, 664 P.2d 1188, 1189–90 (Utah 1983) (denying motion made day of trial); *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983) *overruled on other grounds by Meadowbrook, L.L.C. v. Flower*, 959 P.2d 115 (Utah 1998) (same); *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210,

1216–17 (Utah Ct.App.1989) *vacated on other grounds*, 830 P.2d 252 (Utah 1992) (denying motion because made day before trial and three years after original complaint filed); *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah Ct.App.1988) (denying motion made morning of trial).

¶ 33 In each of these cases cited above, leave to amend a complaint was sought much later in the litigation process than here. Ms. Nuñez made her motion to amend a little over a year after she filed her complaint. At the time Ms. Nuñez filed her motion, no scheduling order had been entered, no trial date had been set, no expert discovery had taken place, and discovery was still on-going. On August 14, 2000, before any expert discovery had been taken, Dr. Albo filed his motion for summary judgment. Although Ms. Nuñez was aware of Dr. Albo's status as a University employee, she believed he also conducted a private medical practice and was therefore acting outside his scope of employment and personally liable for her injuries. That belief was not unreasonable given Ms. Nuñez's limited understanding of English and the circumstances surrounding her treatment. For example, Ms. Nuñez received treatment by Dr. Albo in an office away from the University and there were no medical students or residents present. However, after some limited discovery was complete, Ms. Nuñez sought to add the University as a party. Given these facts, we do not believe Ms. Nuñez's motion was untimely or that she failed to adequately explain her delay in naming the University.

¶ 34 Finally, defense counsel argues that Ms. Nuñez's proposed amendment, which is virtually identical to the complaint filed against Dr. Albo, would prejudice the University because it "raises a new theory of vicarious liability and would require the University to begin its own separate investigation and analysis of the claims against Dr. Albo." However, it was defense counsel's own argument that Dr. Albo was working within the scope of his employment that ultimately allowed Dr. Albo to succeed on his motion for summary judgment. *See Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994) ("[E]mployers are vicariously liable for torts committed by employees while acting within the scope of their employment.").

¶ 35 As we have stated previously, the University was aware of Ms. Nuñez's complaint against Dr. Albo and its potential vicarious liability as his employer from the beginning. In addition, defense counsel's claim that the University would be prejudiced because it would be required to begin anew with its own separate investigation and analysis of the claims is unpersuasive.

¶ 36 The claim against the University still stems from the treatment Ms. Nuñez received from Dr. Albo. No new claims or theories have been added and only limited discovery has been done. In fact, when Ms. Nuñez filed a request for trial on March 31, 2000, defense counsel filed an objection to the request arguing, "this case has only been pending for a short time, and there still remains limited fact discovery and all expert discovery to be conducted." Defense counsel argued that because this was a medical malpractice case, "expert discovery is likely the most important aspect of the discovery process." Therefore, based on defense counsel's own argument, the University has not missed the most important aspect of the discovery process. Given that important discovery has yet to be completed and that Ms. Nuñez's proposed amendment does not raise any new theories, we fail to see how the University would be prejudiced if added as a defendant at this time.

## CONCLUSION

¶ 37 Dr. Albo was working within the scope of his employment for the University when he treated Ms. Nuñez, and therefore, we affirm the trial court's decision to grant Dr. Albo's motion for summary judgment. However, the trial court erred in denying Ms. Nuñez's motion for leave to amend. Ms. Nuñez's notice of claim complied with the statutory requirements of the Immunity Act, and the University was put on notice of its potential liability. Further, Ms. Nuñez was justified in her delay to move to join the University, the motion did not come too late into the litigation process, and granting the motion would not result in prejudice to the University. Therefore, we reverse the trial

court's denial of Ms. Nuñez's motion to amend and remand for further proceedings consistent with this opinion.

¶ 38 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (concurring specially):

¶ 39 I concur in the court's opinion, but wish to register a concern.

¶ 40 In the procedural posture of this case, Dr. Albo was entitled to summary judgment with respect to his individual liability. The very reason he is off the hook personally—he demonstrated in moving for summary judgment that anything he did, he did in the course and scope of his employment as an employee of the University—seals the responsibility of the University to answer for any negligence in the course of Dr. Albo's treatment of Plaintiff.

¶ 41 That having been said, it should be noted that it would not have been at all clear to Plaintiff that Dr. Albo was rendering treatment to her as a University employee. She visited him not at the University Hospital or any of the ancillary buildings, but at a private office off campus, adjacent to Salt Lake Regional Hospital—a hospital at which Dr. Albo also had privileges, a hospital which covered the larger portion of his secretary's salary, and a hospital at which many of his patient records were kept. Neither University medical students nor University Hospital interns or residents observed or participated in any of the procedures performed by Dr. Albo on Plaintiff. The sclerosing agent used by Dr. Albo was not secured from the supplies of University Hospital, but rather was procured in Italy by his daughter. (Apparently the sclerosing agent has not been approved for use in this country by the Food and Drug Administration.)

¶ 42 While it is clear given the record in this case that Dr. Albo was in fact a University employee who treated Plaintiff in the course of that employment as it was broadly defined by the University, it is also clear this would have come as a surprise to Plaintiff. Indeed, it is almost as though Dr. Albo and/or the University preferred that his status not come to Plaintiff's attention until long after she had been treated. Perhaps clear, unambiguous, and early disclosure that a treating physician enjoys the protection of the Utah Governmental Immunity Act is not good for business.

¶ 43 Surely courts will look askance, as we have done here, at any effort to obscure the University's role if that effort is coupled with a later attempt to avoid responsibility altogether. Such a strategy runs something like this: You cannot hold the doctor personally liable because he is an employee of the University and did this work in the course of that employment. And you cannot hold the University responsible because your notice of claim was directed to the doctor rather than the University. Moreover, it is inconsequential that we wanted him to seem like any ol' doctor in private practice rather than a University professor or state employee so that you would not worry too much about the remedies available to you in the event of malpractice and thus are largely responsible for your focusing on him initially rather than the University.

¶ 44 The main opinion's scholarly and well-reasoned discussion about the adequacy of the notice of claim and the "relation back" doctrine avoids this inequitable result by permitting Plaintiff to amend her complaint and proceed against the University as Dr. Albo's employer.