Francine G. SCARBOROUGH, for herself and as guardian for Jeffrey Dean Scarborough, Plaintiff and Appellant,

v.

GRANITE SCHOOL DISTRICT, a political subdivision of the State of Utah, Defendant and Respondent.

No. 13558.

Supreme Court of Utah.

Feb. 3, 1975.

James F. Housley, Salt Lake City, for plaintiff and appellant.

Leonard H. Russon, of Hanson, Wadsworth & Russon, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff Francine G. Scarborough, for herself and as guardian for her 12-year-old son Jeffrey, sues to recover for injuries he suffered in a fall on the playground at the Holladay Elementary School of the defendant, Granite School District. Upon the basis of the pleadings, depositions and affidavits, the trial court ruled that because the plaintiff had failed to file a claim as required by Section 63–30–13, U.C.A.1953, quoted below, her action was barred; and therefore there was no issue of material fact which if resolved in her favor would entitle her to prevail, and entered judgment of dismissal against her.[1] She appeals.

On the morning of February 29, 1972, Jeffrey, and other boys were playing on the ball ground of the School. About a month before, one of the utility poles had been knocked down by maintenance employees while trimming trees; and some dead wires had been left dangling from the remaining poles. It was in playing and swinging with these wires that Jeffrey fell several feet to the ground and suffered the injuries complained of. The principal, William Lee Anderson, was informed, examined and talked to the boy, and permitted him to go to class. About an hour later, Jeffrey developed nausea and began vomiting. His mother was called and she took him home.

Later that day she called Mr. Anderson and talked to him about the apparently serious nature of Jeffrey's injuries, asked for details concerning the accident and responsibility therefor. She avers that he told her that the tree trimming had been done and the wires left in that condition by the utility company, Utah Power & Light Company.[2] Mr. Anderson filed a report of his investigation with the office of defendant, Granite School District. Two days after the accident, plaintiff employed an attorney (not present counsel) to handle this matter. It is alleged that in reliance on Mr. Anderson's statements, the attorney made demand upon the Utah Power & Light Company, and further, that it was not until six months later plaintiff learned that it was not Utah Power & Light Company, but employees of the School District who had done the work and left the wires in that condition.

The statute of concern here upon which the court based its dismissal is Section 63–30–13, U.C.A.1953:

A claim against a political subdivision shall be forever barred unless notice thereof is filed within ninety (90) days after the cause of action arises . . . ..

Plaintiff makes no contention that there was any literal compliance with that statute in the usual form or sense. Her argument is that because of the conversations with the principal, his representations as to who was responsible; and his report to the School District, it should be deemed: (1) that she had made a sufficient "filing" of a claim to satisfy the requirements of the statute; and (2) that the School District should be estopped to assert the protection of the statute.

---

1. See Rule 56, U.R.C.P.

2. Mr. Anderson denied this, but in view of the rejection of her cause by dismissal, for the purpose of determining the correctness of the ruling, we accept her averment as the fact.

### Oral Statements as a "Filing"

The School District is a political subdivision of the state.[3] Therefore it would normally be immune from suit; and the right to sue is an exception created by statute.[4] We have consistently held that where a cause of action is based upon a statute, full compliance with its requirements is a condition precedent to the right to maintain a suit.[5] In order to so meet the requirements of the statute quoted above and fulfill its intended purpose, the "filing" of a claim should include these essentials: that it be in writing;[6] that it contain a brief statement of the facts and the nature of the claim asserted; that it be subscribed by the party required to give it and who intends to rely on it; that it be directed to and delivered to someone authorized to or responsible for receiving it; and that this be done within the prescribed time.[7] It should require no exposition to demonstrate that the oral conversation with the school principal, and the fact that he turned in a report to the School District, do not satisfy the foregoing requirements.

### The Claimed Estoppel

On her issue relating to estoppel, the plaintiff argues that the conversation with the school principal brings her case within the ruling of this court in Rice v. Granite School District.[8] There are significant differences between this case and that one. There the plaintiff had filed a timely written notice with the School District. The plaintiff's contention was that the insurance adjuster, who was handling the matter for the School District, gave the plaintiff assurances that the case would be settled after the extent of injuries and damages had been determined, and that this lulled her into a sense of security until after the time for filing the suit had expired. Then the School District attempted to assert that as a defense. We remanded for a trial as to the facts.

Here there is no averment that the principal, Mr. Anderson, made any representation, either that the School District was responsible, or that it would be responsible, to the plaintiff. The best that can be said from the plaintiff's point of view is that he told her either: that the Utah Power & Light Company was responsible, or that he was not sure who was responsible for the condition of the wires. But it is without dispute that he told her that he could not give her any information or do anything about it, and that that would have to be done with Dr. Lloyd of the School District office. Accordingly, he did nothing to delude, dissuade or delay plaintiff or her attorney in the filing of her claim.

From what has been said herein it is our conclusion that the trial court could properly rule as a matter of law that because of the plaintiff's failure to file a claim within the time allowed by the statute; and because there is no basis upon which estoppel against the defendant's reliance on the statute could be made out, that she cannot show entitlement to maintain this action.

Affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

MAUGHAN, Justice (dissenting):

I respectfully dissent.

The facts as stated by Mr. Justice Crockett are accepted.

---

3. Sec. 63–30–2, U.C.A.1953, defines a political subdivision as: " . . . any county, city, town, school district. . . "

4. See Sec. 63–30–3, U.C.A.1953.

5. Varoz v. Sevey, 29 Utah 2d 158, 506 P.2d 435 (1973); Gallegos v. Midvale City, 27 Utah 2d 27, 492 P.2d 1335 (1972); Hurley v. Bingham, 63 Utah 589, 228 P. 213 (1924).

6. That an oral notice does not suffice as a "filing," but it must be in writing, see Tooele Meat & Storage Co. v. Morse, 43 Utah 515, 136 P. 965; and see 66 C.J.S. Notice § 16, p. 656; and 58 Am.Jur.2d, Notice, p. 505.

7. 56 Am.Jur.2d, Municipal Corporations, Counties and Other Political Subdivisions, Sec. 683.

8. 23 Utah 2d 22, 456 P.2d 159.

Our statute, 63–30–13, U.C.A.1953, as amended, says two things:

A claim against a political subdivision shall . be forever barred unless notice thereof is filed within ninety days after the cause of action arises; provided, however, that any claim filed against a city or incorporated town under section 63–30–8 shall be governed by the provisions of section 10–7–77, Utah Code Annotated, 1953.

First, it says that a claim against a political subdivision will be barred, unless notice of the claim is filed within ninety days after the cause of action arises. Second, it says that any claim filed against a city or incorporated town under this section, shall not be governed by the provisions of 63–30–13, but shall be governed by the provisions of 10–7–77. The first part of the statute says nothing about a written notice, nor to whom notice shall be delivered. The second part of the statute requires examination of 10–7–77, which specifies that the claim referred to there must .be in writing. It further is very explicit about what the notice of the claim must contain, and to whom it must be presented. These two statutes are distinctly different. They are similar only in the fact that both require some notice.

The purpose of statutes requiring the presentation of claims to political subdivisions, prior to filing a suit, is in furtherance of public policy to prevent unnecessary litigation. The purpose of notice provisions is to afford the political subdivision an opportunity to investigate the claim while the matter is of recent memory, witnesses are yet available, conditions have not materially changed and to determine if there is liability, and if there is, the extent

of it. These salutary provisions do serve to prevent needless litigation.[1] The procedure set out in the main opinion is merely more mechanistic, but would not impart any more notice than defendant had.

The main opinion has engrafted on 63–30–13 all manner of requirements for the notice, which are not set forth in the statute, nor necessary. The subject statute says nothing about written notice, but the main opinion cites the case of Tooele Meat & Storage Co. v. Morse, 43 Utah 515, 136 P. 965, wherein, Mr. Justice Frick says:

We think the law is well settled that where a statute requires notice to be given but is silent with respect to the manner of notification, written notice is understood. . . . A substantial compliance with the statute in that regard is, we think, all that is necessary.

In support of that proposition, Mr. Justice Frick cites 29 Cyc. 1117:

The general rule in respect to notices is that mere informalities do not vitiate them so long as they do not mislead, and give the necessary information to the proper parties.

In view of the fact that our statutes are to be liberally construed to effect their objectives and to promote justice,[2] I would not extend, by implication, the terms of 63–30–13, particularly where it is invoked by a political subdivision to avoid liability.[3] And again, particularly where the object of 63–30–13 is to give a right of action to the citizen where one did not previously exist. If our guide, for engrafting on 63–30–13 the notice requirements stated in the main opinion, is 10–7–77, then we should be further guided by the latter statute, as amended, with reference to claims for minors.[4, 5]

1. 56 Am.Jur.2d, Municipal Corporations, etc., Sec. 686.

2. Sec. 68–3–2, U.C.A.1953.

3. 56 Am.Jur.2d, Municipal Corporations, etc., Sec. 687.

4. See the dissents in Gallegos v. Midvale City, 27 Utah 2d 27, 492 P.2d 1335 (1972) ; Varoz

v. Sevey, 29 Utah 2d 158, 506 P.2d 435 (1973).

5. The instant matter sparks recollection of the instructions given by the Khalif Omar, to his first Kadi c. 900 A.D.: "If thou seest fit to judge differently from yesterday, do not hesitate to follow the truth as thou seest it; for truth is eternal and it is better to return to the true than to persist in the false!"

Given the salutary public policy in 63–30–13, allowing one redress against a political subdivision, the lack of express requirements, and the substantial compliance doctrine set forth in the Tooele case; I would hold the following:

That defendant did have notice, that it had written notice (in the form of the school principal's written report, filed with defendant), that it was not misled, and that it had all of the opportunities the statute means to provide it, viz., an opportunity to investigate, to secure its witnesses, to determine liability and the extent of it, all before a material change in conditions. If anyone were misled, plaintiff was.

That if the foregoing were not determinative of this matter (and I think it is), the conflict in the statements of plaintiff and the school principal necessarily needs to be determined at trial, and if determined in plaintiff's favor, such would be sufficient to allow the action, because the detrimental effect of the misleading statement would thereby be cured.

That the holding of the district court be reversed and the matter remanded for trial.