Robert W. ADKINS, Plaintiff
and Appellant,

v.

The DIVISION OF STATE LANDS OF
the STATE OF UTAH, Defendant
and Respondent.

No. 19170.

Supreme Court of Utah.

April 21, 1986.

Bryce Roe, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Ann M. Stirba, Donald S. Coleman, Salt Lake City, for defendant and respondent.

HOWE, Justice:

In this declaratory judgment action plaintiff sought to have the district court declare valid and binding an oil, gas, and hydrocarbon lease which he had entered into with the Division of State Lands. The Division had cancelled the lease, claiming that it had been erroneously entered into because the lands leased had previously been withdrawn from oil, gas, and hydrocarbon leasing. After hearing arguments on pretrial motions, the court held that it did not have jurisdiction to hear the case because plaintiff had failed to satisfy the jurisdictional requirements of U.C.A., 1953, §§ 63–30–1 to –38 (the Governmental Immunity Act) and U.C.A., 1953, § 65–1–9(2) (dealing with appeals from the "State Land Board").

On March 24, 1980, the Division of State Lands granted plaintiff an oil, gas, and hydrocarbon lease covering two tracts of land in San Juan County, Utah. One year later, however, the Division wrote plaintiff informing him that the larger of the tracts had been previously withdrawn from oil, gas, and hydrocarbon leasing and notified him that the tract was being deleted from the lease. On May 19, 1981, plaintiff wrote the Department of Natural Resources (which includes the Division of State Lands) and requested a hearing "pursuant to the Rules and Regulations of the Division of State Lands" on the deletion of the tract from the lease. Pursuant to plaintiff's request, the Board of State Lands held a hearing on the matter. It issued its final order denying plaintiff's requests on August 12, 1981.

(The Division also deleted the smaller tract from the lease in August of 1981, but plaintiff conceded below the Division's authority to do so.)

### Governmental Immunity

The trial court held that because this action involved a claim to real property, it fell under section 63–30–6 of the Governmental Immunity Act; consequently, the plaintiff had to follow the strictures of that Act by giving timely notice of his claim to the Attorney General, as required by section 63–30–12, and by filing an undertaking when he commenced this action, as required by section 63–30–19. He admittedly did neither. We believe the court's reliance upon the Governmental Immunity Act was misplaced. Since statehood the Board of Land Commissioners, later known as the State Land Board and now the Division of State Lands, has had the statutory authority to manage and control state lands, with power to sell and lease the same. Section 65–1–9(2) contemplates that the "board" (as hereinafter defined) shall decide disputes arising from the sale, lease, or disposition of state lands, subject to judicial review. This subsection was enacted in 1963, which was two years before the Governmental Immunity Act, section 63–30–1, et seq., was enacted. We find nothing in the Immunity Act which indicates that the legislature intended to impose the requirement of filing a claim with the Attorney General when the claimant was pursuing a dispute which by statute had been made cognizable by an administrative body. This view is consistent with our decision in *Archer v. Utah State Land Board*, 15 Utah 2d 321, 392 P.2d 622 (1964), where we held that governmental immunity was not a defense to an action for a writ of mandamus to compel the defendant land board to comply with its statutory duty to issue an oil and gas lease to the plaintiff. In that case, we distinguished *Wilkinson v. State*, 42 Utah 483, 134 P. 626 (1913), where we held that governmental immunity barred

an action for *damages* against the State caused by waters escaping from a canal owned and controlled by the Board of Land Commissioners.

Section 65–1–9(2) expressly authorizes judicial review of a decision of the "board." We find no persuasive reason why we should engraft upon that subsection the requirement of filing an undertaking as required by section 63–30–19, which applies to the filing of actions on claims against the State where immunity once existed but which has been expressly waived by the Governmental Immunity Act. That is not the situation in the instant case where we are dealing with an appeal from an administrative agency to the courts as authorized by statute.

### Board Protest

■ The district court also held that it did not have jurisdiction because plaintiff had not protested to the Board of State Lands within ninety days after its decision, as required by section 65–1–9(2), which provides:

> No claimant for lands under control of the board can appeal for judicial review of a decision of the board involving any sale, lease, or disposition of state lands, or any action relating thereto, unless such claimant files a written protest with respect thereto with the board within ninety days after the final decision of the board relating to such matter; or, with respect to decisions rendered prior to the effective date of this act, within ninety days after such effective date. This provision shall not relate to disputes between the board and any party as to the ownership or title to any lands.

The plaintiff contends that the ninety-day requirement in subsection (2) does not apply to him, but applies only to contests arising as to the preference rights of claimants for lands under the control of the Board, which is the subject of subsection (1). We concede that an arguable position can be made for that interpretation since usually subsections of the same statute have direct relation to each other. How-

ever, despite the attractiveness of that argument, we note that the express language of subsection (2) is broader than the language of subsection (1) and encompasses all claimants (not just those asserting preference rights) who seek judicial review of a decision of the Board involving any sale, lease, or disposition of state lands. That being so, we would not be justified in limiting the scope of subsection (2) to only those cases in which preference rights of claimants are asserted. The language is broad enough to include the dispute of the plaintiff regarding his lease.

■ The Board of State Lands has construed section 65–1–9(2) as a delegation of authority to it to hear appeals from decisions of the Division of State Lands. The Board also construed this section as requiring a claimant who is adversely affected by a decision made by the Division to first appeal to the Board and then, if not satisfied by the Board's decision, to protest again to the Board before seeking judicial review of that decision.

We generally give deference to an administrative agency's construction of a statute where its technical expertise is helpful or where the statute indicates a legislative intention to commit broad discretion to an agency to effectuate the purposes of the legislative scheme. However, on questions of statutory construction involving pure questions of law, we owe no deference to the administrative determination. *Salt Lake City Corp. v. Department of Employment Security*, Utah, 657 P.2d 1312 (1982). Construing section 65–1–9(2) requires no technical expertise and is a pure question of law. Therefore, we are free to substitute our judgment for that of the Board of State Lands.

■ Plaintiff contends that the district court and the Board of State Lands misconstrued section 65–1–9(2) in holding that he had failed to exhaust his administrative remedy by not making timely protest to the Board. He grounds his contention on the 1967 amendments to the statutes governing the administration of state lands. Pri-

or to 1967, the State Land Board, as it was then called, held all the powers and responsibilities which are now held by two distinct but related entities: the Board of State Lands and the Division of State Lands. In 1967, however, the legislature enacted the Utah Natural Resources Act, 1967 Laws of Utah ch. 176 (hereinafter Act), which organized the Department of Natural Resources. Among other things, the Act created the Board of State Lands and the Division of State Lands within the Department and divided the duties and responsibilities of the old State Land Board between the new Board of State Lands and the Division of State Lands.

Sections 23 and 25 of the Act, now codified as U.C.A., 1953, §§ 65–1–1 and 65–1–2.1, delineated the powers and responsibilities of the new Division and Board. Section 65–1–2.1 provides:

> There is created the division of state lands, which shall be within the department of natural resources under the administration and general supervision of the executive director of natural resources and under the policy direction of the board of state lands. *The division of state lands* shall be the state land authority for the state of Utah, *shall assume all of the functions, powers, duties, rights and responsibilities of the state land board except those which are delegated to the board of state lands by this act* and is vested with such other functions, powers, duties, rights and responsibilities as provided in this act and other law.

(Emphasis added.) It is clear that the Division has all the powers formerly held by the State Land Board, except those that the Act delegated to the Board of State Lands. The delegation of authority to the Board of State Lands is found in section 65–1–1:

> There is created within the department of natural resources a board of state lands which, except as otherwise provided in this act, shall assume all of the policy-making functions, powers, duties, rights and responsibilities of the state land board, together with all functions, powers, duties, rights and responsibilities granted to the board of state lands by this act. The board of state lands shall be the policy-making body of the division of state lands. *Except as otherwise provided in this act, whenever reference is made in Title 65, or any other provision of law, to the state land board, it shall be construed as referring to the board of state lands where such reference pertains to policy-making functions, powers, duties, rights and responsibilities; but in all other instances such reference shall be construed as referring to the division of state lands.*

(Emphasis added.) Thus, the Act vested in the new Board all of the policy-making powers formerly held by the old State Land Board. By its express provisions, the Act also delegated certain other powers to the new Board.

Section 65–1–1 also explains how the word "board" is to be interpreted throughout Title 65. Accordingly, if section 65–1–9(2) deals with policy making or if the Act has specifically delegated the responsibilities mentioned therein to the Board of State Lands, then we must construe "board" as used in subsection (2) to refer to the *Board of State Lands.* If neither proposition is true, then "board" refers to the *Division of State Lands.*

 As used in the Act, we interpret "policy-making" to mean the establishing of general policies applicable in all instances to the Division of State Lands or to all persons dealing with the Division. Policy making is legislative in nature because it looks to the future and is prospective in its application. Section 65–1–9(2), however, deals with administrative adjudication of claimants' rights and grievances on a case-by-case basis. Its application is to named individual claimants or to specific situations and not to a class of persons or a general situation or a class of situations. Hence, it is not policy making. *Wood County Bank v. Camp,* 348 F.Supp. 1321 (D.D.C.1972); *American Export-Isbrandtsen Lines, Inc. v. Federal Maritime Commission,* 389 F.2d 962 (D.C.Cir.1968); *Philadelphia Co.*

528

*v. Securities and Exchange Commission,* 175 F.2d 808 (D.C.Cir.1948), *vacated as moot,* 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715; *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). We are unable to find any other reference in the Act that even hints at giving the Board of State Lands any authority to adjudicate claims. Therefore, as used in section 65–1–9(2), "board" refers to the Division of State Lands.

It therefore follows and we hold that plaintiff's letter of May 19, 1981, requesting a hearing pursuant to the rules and regulations of the Division of State Lands constituted a protest of the Division's action on March 25, 1981, deleting the larger tract from the lease. The protest was made well within the required ninety days. We further hold that the Board of State Lands had no authority to hear and determine plaintiff's grievance. We will disregard its decision as surplusage. We remand this case to the district court to take jurisdiction of it and to review the merits of the Division's act of deletion. No costs on appeal awarded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.