Harold **BRITTAIN**, Plaintiff and Appellant,

v.

**STATE of Utah, by and through UTAH DEPARTMENT OF EMPLOYMENT SECURITY aka Job Service; and the State of Utah, by and through Utah Division of Facilities, Construction and Management, Defendants and Appellees.**

No. 930416–CA.

*Court of Appeals of Utah.*

Sept. 15, 1994.

---

Brent D. Young, Provo, for appellant.

Jan Graham and Debra J. Moore, Salt Lake City, for appellees.

Before DAVIS, JACKSON and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Harold Brittain appeals the trial court's order dismissing his personal injury claim for failure to file notice in accordance with the Utah Governmental Immunity Act. We reverse and remand.

## FACTS

On February 4, 1991, Brittain was injured when he fell down some icy steps at the Department of Employment Security (Job Service) in Provo, Utah. Shortly after the accident, James Christiansen, a claims adjustor and investigator, contacted Brittain and indicated he would be handling the claim on behalf of Job Service and the Utah Division of Risk Management. On March 11, 1991, Brittain, through his attorney, filed notice of his claim with both the attorney general and the Division of Risk Management. Brittain alleged that melting snow had dripped off the roof of the building and frozen on the steps, that the Division of Facilities Construction and Management (DFCM) was negligent in approving the design and construction of the building, and that both DFCM and Job Service were negligent in maintaining the building and its premises. Christiansen met with Brittain's attorney on March 12, 1991, to discuss settling Brittain's claim. From mid-April through the end of August of 1991, those discussions continued. During that time, Christiansen sent Brittain's attorney six separate letters reaffirming that he was acting as an agent on behalf of Job Service and Risk Management. The settlement discussions failed and Brittain, having sent timely notice of his claim to both the Utah Attorney General and Risk Management, filed this action.

On June 4, 1992, after fifteen months of settlement discussion and extensive discovery, and only four days before the case was to be tried, the State filed a motion to dismiss on the ground that Brittain had failed to file notice of claim with either Job Service or DFCM as required by the Utah Governmental Immunity Act. See Utah Code Ann. §§ 63–30–1 to –38 (1993 & Supp.1994). The trial court, ruling from the bench, granted the State's motion, reasoning that filing notice of claim with Risk Management did not fulfill the necessary requirement of filing notice with "the agency concerned." Id. § 63–30–12. Brittain appeals from this order.

## ISSUE

The sole issue presented is whether, given the facts of this case, the trial court erred by concluding that Brittain's serving notice of claim upon Risk Management did not constitute service upon the agency concerned as required by Utah Code Ann. § 63–30–12 (1993).

## STANDARD OF REVIEW

We will uphold a trial court's grant of a motion to dismiss "only where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." Prows v. State, 822 P.2d 764, 766 (Utah 1991). On appeal, we accept the facts alleged in the complaint as true, and consider those facts and all reasonable inferences drawn therefrom, in a light most favorable to plaintiff. Demond v. FHP, 849 P.2d 598, 599 (Utah App.1993). Key to our decision is the interpretation of the statute imposing a notice requirement as a prerequisite to bringing an action against the State. The trial court's interpretation of a statute is a legal conclusion which we review for correctness, according no particular deference to the trial court. Jerz v. Salt Lake County, 822 P.2d 770, 771 (Utah 1991).

## GOVERNMENTAL IMMUNITY

The doctrine of sovereign or governmental immunity—requiring the consent of the State in order to subject it to suit in its own courts—is a deeply rooted and well recog-

nized doctrine of American common law. *See Madsen v. Borthick,* 658 P.2d 627, 629 (Utah 1983). The doctrine is a carryover from medieval times, and reflects the notion that the sovereign, in whom reposed ultimate governmental powers, was simply incapable of doing wrong.[1] The Utah Governmental Immunity Act, *see* Utah Code Ann. §§ 63–30–1 to –38 (1993 & Supp.1994), which went into effect in 1966, codified the common law principle of sovereign immunity and created various exceptions to the doctrine. *Madsen,* 658 P.2d at 629–30.

■ Scores of Utah cases have interpreted this Act and defined the requirements necessary to overcome the State's immunity.[2] Among these many cases, courts have, periodically, had occasion to interpret the Act's notice requirements. *See, e.g., Cox v. Utah Mortgage & Loan Corp.,* 716 P.2d 783, 785–86 (Utah 1986); *Madsen,* 658 P.2d at 630; *Sears v. Southworth,* 563 P.2d 192, 193–94 (Utah 1977); *Scarborough v. Granite Sch. Dist.,* 531 P.2d 480, 482 (Utah 1975); *Lamarr v. Department of Transp.,* 828 P.2d 535, 540–42 (Utah App.1992); *Kabwasa v. University of Utah,* 785 F.Supp. 1445, 1446–47 (D.Utah 1990). Strict compliance with the notice requirement has typically been necessary to maintain an action against the State. *See Sears,* 563 P.2d at 194; *Scarborough,* 531 P.2d at 482. While defects in the form or content of notices of claim do not always act to bar a claim, *see Behrens v. Raleigh Hills Hosp., Inc.,* 675 P.2d 1179, 1183 (Utah 1983); *Spencer v. Salt Lake City,* 17 Utah 2d 362, 363–64, 412 P.2d 449, 450 (1966), courts have consistently barred claims in situations where either no notice or only one of the two required notices was filed. *See Lamarr,* 828 P.2d at 541; *Kabwasa,* 785 F.Supp. at 1446–47. However, until now, no reported Utah decision has barred a claim when two notices, free of defects, were timely filed. Thus, this appeal presents an issue of first impression and necessitates our careful review of the notice of claim requirements within the Utah Governmental Immunity Act. *See* Utah Code Ann. §§ 63–30–11 to –13 (1993).

## NOTICE OF CLAIM

The Governmental Immunity Act provides that

> [a]ny person having a claim for injury against a governmental entity, or against an employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority shall file written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.... The notice of claim shall be ... directed and delivered to the responsible governmental entity according to the requirements of Section 63–30–12 or 63–30–13.
>
> ....
>
> A claim against the state, or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, is barred *unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises* ....

Utah Code Ann. §§ 63–30–11, –12 (1993) (emphasis added).

■ Under these sections, a plaintiff must give timely notice to both the attorney general and "the agency concerned" in order to maintain an action against the State. Neither party disputes that appropriate notice was sent to the attorney general. It is also undisputed that notice was sent to the Division of Risk Management within one year after the claim arose. The trial court found that such notice was deficient because it concluded Risk Management was not "the agency concerned" within the meaning of section 60–30–12. To assess the accuracy of this conclusion we must determine what the Leg-

---

1. This underlying premise has, of course, long since been rejected. Indeed, the American Revolution resulted from the perception of most American colonists that the British sovereign had perpetrated any number of wrongs. *See* The Declaration of Independence (U.S.1776).

2. A brief recap of how this doctrine evolved can be found in *Condemarin v. University Hospital,* 775 P.2d 348, 349–51 (Utah 1989).

islature, in promulgating section 63–30–12, intended to include within the term "the agency concerned."[3]

### A. Serving Notice on the Agency Concerned

■ To interpret a statute, we first examine its plain language and will resort to other methods of statutory interpretation only if we determine that the language is ambiguous. *State v. Vigil,* 842 P.2d 843, 845 (Utah 1992); *Krauss v. Department of Transp.,* 852 P.2d 1014, 1018 (Utah App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). The State contends that serving notice on "the agency concerned" plainly requires serving notice on the agency allegedly at fault for the claimant's injuries. However, the Legislature chose not to employ fault-based terminology into the notice requirement of section 63–30–12; instead, it employed the more nebulous and far broader language of "the agency concerned." If the Legislature had intended to require a claimant to serve notice on the agency allegedly at fault, it would have used different language, perhaps requiring that notice be sent to the agency that would have been liable if it were a private party.[4]

■ Moreover, the Legislature's decision to employ singular usage and require notice to *"the agency* concerned" is inconsistent with a fault-based scheme. Unlike the imprecise word "concerned," fault is a more technical concept and fault is frequently shared by multiple parties. If fault were at the heart of determining to whom notice should be sent, singular usage would be avoided and the statute would clearly require that in cases, like the instant one, where two or more agencies are claimed to be at fault, more than two notices of claim would be required—one to the attorney general and an additional notice of claim to every agency which might be at fault. However, the State does not contend, nor do the statute or prior cases suggest, that more than two notices are ever required.[5]

Because the term "agency concerned" is not clear on its face, we will interpret the notice requirement of section 63–30–12 in a manner consistent with the overall purpose of the Utah Governmental Immunity Act. As explained by the Utah Supreme Court, "[i]t is necessary to consider the policy of the notice requirement so that in any particular case the facts can be evaluated to determine if the intent of the statute has been accom-

---

**3.** The State contends that because the current version of section 63–30–12 was enacted in 1965 and went into effect in 1966, the requirement of filing notice with the agency concerned could not have been meant to refer to Risk Management, which was not created until 1981. However, when Risk Management was created, the Legislature gave it powers and responsibilities that suggest it can readily fit within the term "agency concerned" for purposes of section 63–30–12. *See* Utah Code Ann. §§ 63A–4–101 to –206 (1993) (defining powers and duties of Risk Management). *See also* Utah Admin.Code R37–1–1 to –5 (1994) (administrative rules establishing policies and procedures of Risk Management). We should assume that when the Legislature created Risk Management it did so advisedly, fully aware of the impact this would have on existing law. *See Greenhalgh v. Payson City,* 530 P.2d 799, 801 (Utah 1975). *See also Adkins v. Division of State Lands,* 719 P.2d 524, 525–26 (Utah 1986) (holding plaintiff need not file notice in accordance with section 63–30–12 because Division of State Lands had statutory authority to decide dispute prior to the creation and enactment of the Governmental Immunity Act).

**4.** *See, e.g.,* Utah Code Ann. § 63–30–11(1) (1993) (providing that "[a] claim [against the State]

arises when the statute of limitations that would apply if the claim were against a private person begins to run"). *See also* Utah Code Ann. § 63–30–4(1)(b) (1993) (providing that if the State waives its immunity from suit, "consent to be sued is granted, and liability of the entity shall be determined *as if the entity were a private person").

**5.** In the instant case, Brittain alleges that the Division of Facilities Construction and Management (DFCM) was negligent in approving the design and construction of the building, and that both DFCM and Job Service were negligent in maintaining the building and its premises. Thus, Brittain claims that while DFCM is responsible for creating the dangerous condition, both DFCM and Job Service share the blame for allowing the dangerous condition to remain. Under the State's fault-oriented view, no reason exists why Brittain would not be required to file three notices of claim—one with the attorney general, one with the DFCM, and one with Job Service. Nonetheless, the statute contemplates that only two notices be sent and the State does not contend otherwise in this appeal.

plished." *Stahl v. Utah Transit Auth.*, 618 P.2d 480, 482 (Utah 1980).

### B. Purpose of Notice

■ "[T]he primary purpose of a notice of claim requirement is to afford the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of a claim and to arrive at a timely settlement, if appropriate, thereby avoiding the expenditure of public revenue for costly and unnecessary litigation." [6] *Stahl v. Utah Transit Auth.*, 618 P.2d 480, 482 (Utah 1980). *See Sears v. Southworth*, 563 P.2d 192, 193 (Utah 1977); *Spencer v. Salt Lake City*, 17 Utah 2d 362, 364, 412 P.2d 449, 450 (1966). Serving notice on the attorney general is intended to ensure that the State's legal needs are met.[7] *See Lamarr v. Department of Transp.*, 828 P.2d 535, 541 n. 6 (Utah App.1992). Furthermore, filing notice of claim tends to minimize the difficulties that may arise due to changes in administrations. *Sears*, 563 P.2d at 193. Lastly, the requirement that the notice be in writing protects against the passage of time obscuring memory and distorting a plaintiff's recollection of the events which are at the heart of the claim.[8] *See Stahl*, 618 P.2d at 482.

■ Having ascertained the purposes of the notice requirement, we next must establish a working definition of the term "agency concerned" in order to evaluate the adequacy of notice in this case. Because the term "agency concerned" is not defined by statute, we turn to its commonly understood meaning. The word "concerned" is defined as meaning "interested." *Webster's Third New International Dictionary* 470 (1976). Thus, the statute's requirement that plaintiff must file notice of claim with "the agency concerned" is met by filing notice with any one of potentially several agencies with a legitimate interest in plaintiff's claim and the legal proceedings which might result therefrom.

## ADEQUACY OF NOTICE IN THIS CASE

■ We now assess Brittain's contention that the notice he filed with Risk Management in this case constituted compliance with section 63-30-12 in light of both the broad language of that section and the aforementioned policy considerations.

### A. Risk Management is Agency Concerned

The duties of Risk Management mandate it take an active role in Brittain's claim and clearly suggest it is an agency concerned. To begin with, Risk Management is authorized by law to handle Brittain's claim, representing the interests of the State. Risk Management is empowered with broad-based authority to handle claims on behalf of the State. *See* Utah Code Ann. §§ 63A-4-101 to -206 (1993); Utah Admin.Code R37-1-1 to -5 (1994). The Legislature has authorized Risk Management to "adjust, settle, and pay claims." Utah Code Ann. § 63A-4-102(1)(c)

---

6. In the instant case, this purpose was fully accomplished well in advance of any notice being given. Within days of this accident, the sovereign's agent contacted plaintiff and, with commendable responsibility, set about to investigate what happened and to settle the claim without need for litigation. The main purpose of the statute having been met, this appeal is reduced to evaluating whether plaintiff has abided by the technical provisions of the Utah Governmental Immunity Act—a statute with which plaintiffs must strictly comply in order to overcome the State's immunity.

7. The Attorney General has a duty to "defend all causes to which the state ... is a party." Utah Code Ann. § 67-5-1(1) (1993).

8. The Utah Supreme Court has previously stated that the notice of claim requirement is also intended to provide the State with the opportunity to promptly remedy any defect before additional injury occurs. *See Sears v. Southworth*, 563 P.2d

192, 193 (Utah 1977). However, the plain language of section 63-30-12 is contrary to the notion that one of its purposes is to allow for prompt remedial measures. Section 63-30-12 allows one year to file a notice of claim. If the Legislature intended to require a notice of claim to facilitate the prompt correction of potentially dangerous defects or conditions, it certainly would have required that plaintiff notify the State of the hazard in a far more expeditious manner than anytime within one year of the incident.

For example, in the case before us, Brittain was injured on February 4, 1991, when he slipped on the ice at Job Service. He had one year to file notice of claim with the State. *See* Utah Code Ann. § 63-30-12 (1993). The dangerous condition could have remained for several more weeks, but in any event it would certainly have melted away long before the one-year period had expired.

(1993). Directly relevant to the case at bar, if suit is brought against a state agency pursuant to the Utah Governmental Immunity Act, the agency shall immediately forward to Risk Management any notice of claim it receives. Utah Admin.Code R37–1–3(B) (1994). The risk manager is also required to supervise the state-funded risk management fund. Utah Code Ann. § 63A–4–201(1)(a) (1993). This fund is used to pay all costs authorized by the risk manager relating to property, liability, fidelity and other risks. *Id.* § 63A–4–201(1)(b). Moreover, "[i]n managing and defending claims against covered entities, the Risk Management Fund will consider their interests, but the *final determination* as to claim management, defense and settlement shall be *exclusively* with the Risk Management Fund." Utah Admin.Code R37–1–1 (1994) (emphasis added).

Given this broad-based authority, it cannot be seriously argued that Brittain's claim did not directly and fundamentally concern Risk Management. On the contrary, Risk Management's responsibility and involvement were substantial. Therefore, we can only conclude that Risk Management had a legitimate interest in plaintiff's claim and, by definition, qualified as an "agency concerned."

### B. Purpose of Providing Notice was Met

Moreover, Brittain fulfilled the purposes of section 63–30–12 by filing notice of

his claim with the attorney general and Risk Management.[9] Considering the duties delegated to Risk Management, it appears the state entity entrusted with investigating and settling or defending the claim received the requisite notice in a timely manner and well within the one-year period imposed by the statute. Filing notice with Risk Management in no way inhibited the possibility of settling the claim without resort to litigation. In fact, given the powers and responsibilities the Legislature has bestowed upon Risk Management, the opposite is true. Filing notice with Risk Management facilitated settlement discussions by providing notice to the agency responsible for investigating and settling the claim and obviated the risk that Job Service or DFCM would fail to forward the notice to Risk Management as required by law. *See* Utah Admin Code. R37–1–3(B) (1994). Indeed, the record indicates that Risk Management actively pursued settling Brittain's claim.

Finally, we wish to reiterate that this is not a case where the notice of claim was defective in form or content.[10] Recognizing the need for written notice to protect against the unreliability of memory, the notice of claim was preserved in writing, accurately recording Brittain's account of the accident. This is also not a case where plaintiff either gave no notice or filed only one of the two required notices.[11] Here, plaintiff filed two

---

9. This court has previously stated "that actual notice cannot cure a failure to comply with the notice provisions of the Governmental Immunity Act." *Lamarr v. Department of Transp.*, 828 P.2d 535, 541 (Utah App.1992). Although not expressly stated in *Lamarr*, the rationale behind this rule of strict compliance is clear—the purpose of the notice of claim is not simply to provide information about the facts of the incident that led to the claim being asserted, which facts the affected agencies may already know. Instead, the purpose of the notice statute is to make the State aware that a plaintiff actually intends to assert a claim. Such notice allows the State to investigate and settle the claim in advance of litigation being commenced. Therefore, that Job Service immediately notified Risk Management about Brittain's accident and that both had actual notice of the incident at the heart of Brittain's claim is not dispositive. What matters is that Brittain notified Risk Management—the agency concerned with investigating and settling or defending the asserted claim.

10. *See, e.g., Cox v. Utah Mortgage & Loan Corp.*, 716 P.2d 783, 786 (Utah 1986) (letter to city council proposing city take legal action not sufficient as notice of claim); *Scarborough v. Granite Sch. Dist.*, 531 P.2d 480, 482 (Utah 1975) (school principal's submission of written report to school district, although based on claimant's conversation with principal, did not satisfy notice requirement).

11. For example, in *Lamarr v. Department of Transportation*, 828 P.2d 535 (Utah App.1992), the defect which barred plaintiff's claim was that plaintiff did not file two written notices of claim. In *Lamarr*, plaintiff served UDOT, but failed to serve notice of claim on the attorney general. *Id.* at 540–41. Likewise, in *Kabwasa v. University of Utah*, 785 F.Supp. 1445, 1446–47 (D.Utah 1990), plaintiff's claim was barred because he served only one of the two required notices. Finally, in *Madsen v. Borthick*, 658 P.2d 627, 628 (Utah 1983), plaintiff failed to file any notice of claim with either the attorney general or the agency concerned.

notices, one with the attorney general and the other with Risk Management. Finally, this is not a case where notice of claim was not filed within the one-year period.[12] It is undisputed that plaintiff sent both notices well within one year from the date his claim arose.

## CONCLUSION

Given the facts of the case before us and the powers the Legislature has bestowed upon Risk Management, we conclude that Brittain filed notice of claim on an agency concerned by filing notice with Risk Management. Therefore, the trial court erred in concluding that Brittain failed to comply with section 63–30–12 of the Utah Governmental Immunity Act. Accordingly, we reverse and remand for trial on the merits.

DAVIS and JACKSON, JJ., concur.

---

**12.** *See Richards v. Leavitt,* 716 P.2d 276, 277 (Utah 1985) (per curiam); *Sears v. Southworth,* 563 P.2d 192, 194 (Utah 1977).