Ron BELLONIO, Plaintiff and Appellee,

v.

**SALT LAKE CITY CORPORATION and Salt Lake Airport Authority, Defendants and Appellant.**

No. 950260–CA.

Court of Appeals of Utah.

Feb. 15, 1996.

---

Roger H. Bullock (argued), Strong & Hanni, Salt Lake City, for Appellant.

Gordon K. Jensen (argued), Lehman, Jensen & Donahue, L.C., Salt Lake City, for Appellee.

Before ORME, P.J., DAVIS, Associate P.J., and GREENWOOD, J.

## OPINION

GREENWOOD, Judge:

Appellant Salt Lake City Corporation (the City), on interlocutory appeal, seeks reversal of the trial court's refusal to dismiss appellee Ron Bellonio's action, despite his failure to strictly comply with the relevant notice of claim requirements of the Utah Governmental Immunity Act. *See* Utah Code Ann. §§ 63-30-11, -13 (1993). We reverse.

## BACKGROUND

Bellonio's cause of action arose on June 14, 1992, when he tripped and fell in the parking terrace at the Salt Lake International Airport (the Airport). Utilizing a "fill-in-the-blank" letter, dated July 9, 1992, Bellonio's first attorney informed the Airport's insurance carrier that he was representing Bellonio with respect to an accident which had occurred at the Airport. This letter was forwarded to Robert M. Kern, counsel for the Airport, who responded, on July 22, 1992, instructing Bellonio to address future communications to his office.

On December 7, 1992, Bellonio's second attorney sent a letter to the Airport's safety officer, requesting any reports regarding the accident. This letter was forwarded to Kern, who again requested, on December 22, 1992, that all communications go through his office.

Bellonio's attorney then sent a second letter to Kern, dated December 28, 1992, again requesting information and suggesting that settlement negotiations take place. In this letter Bellonio's counsel indicated his awareness of the potential bar of governmental immunity—even citing the relevant code sections—and of the procedures necessary to comply therewith.

On January 4, 1993, Kern responded that he did not possess much of the requested information and that the rest was likely privileged. On March 24, 1993, Bellonio's attorney sent a letter describing his theory of the Airport's liability. He also provided a synopsis of Bellonio's medical expenses to date and threatened to file a "Notice of Intent to Commence Legal Action" if no settlement took place. Kern acknowledged receipt of this letter on April 6, 1993, and indicated he was awaiting reports by Bellonio's experts indicating any possible liability on the part of the Airport.

On June 11, 1993, Bellonio's attorney prepared a document titled "NOTICE OF INTENT TO COMMENCE LEGAL ACTION AGAINST THE STATE OF UTAH OR ONE OF ITS POLITICAL SUBDIVISIONS." This document was served by mail upon the Utah Attorney General, the Salt Lake City Attorney, the Airport Director,

and Kern, but not upon the City's Mayor or the Salt Lake City Council.

Finally, Bellonio's third set of attorneys filed a complaint against the City and the Airport on June 14, 1994. The trial court dismissed the claims against the Airport, having determined it was a division of Salt Lake City Corporation, rather than a governmental entity in its own right. This dismissal has not been appealed. The City also sought dismissal due to Bellonio's failure to comply with the notice of claim procedures of the Utah Governmental Immunity Act. The trial court denied this motion and the City brought this interlocutory appeal.

## ISSUE ON APPEAL

The sole issue before this court is whether Bellonio properly complied with those notice of claim provisions of the Utah Governmental Immunity Act which apply when an individual sues a political subdivision. *See* Utah Code Ann. §§ 63–30–11, –13 (1993). Bellonio argues that constructive notice to the governmental entity, coupled with substantial compliance with respect to the form of the notice, is sufficient. The City disagrees, contending that only actual notice and strict compliance with all aspects of the notice of claim requirements will satisfy the Governmental Immunity Act.

## STANDARD OF REVIEW

■ Statutory interpretation is a question of law which we review for correctness, granting no deference to the trial court's determinations. *Brittain v. State*, 882 P.2d 666, 668 (Utah App.1994).

## ANALYSIS

This court has addressed the requirements for filing a proper notice of claim in two recent cases. *See generally Bischel v. Merritt*, 907 P.2d 275 (Utah App.1995) and *Brittain*, 882 P.2d at 666. From both the language of the Governmental Immunity Act and extant case law, some initial guiding principles are clear. First, the Governmen-

tal Immunity Act requires that "[a]ny person having a claim for injury against a governmental entity . . . shall file a written notice of claim with the entity *before* maintaining an action." Utah Code Ann. § 63–30–11(2) (1993) (emphasis added). Second, this notice of claim must be filed with the correct persons or entities. *See id.* §§ 63–30–12, –13 (1993); *see also Yates v. Vernal Family Health Ctr.*, 617 P.2d 352, 354 (Utah 1980); *Lamarr v. Utah State Department of Transp.*, 828 P.2d 535, 540–41 (Utah App. 1992).

In the case of a political subdivision such as the City, "[a] claim . . . is *barred* unless notice of claim is filed *with the governing body* of the political subdivision within one year after the claim arises." Utah Code Ann. § 63–30–13 (1993) (emphasis added); *Yates*, 617 P.2d at 354. Bellonio argues the notices he filed with the attorney general, the Salt Lake City Attorney, the Airport Director and Kern satisfied the statutory requirements.[1] We disagree.

■ When interpreting a statute, we begin by examining its plain language. *State v. Vigil*, 842 P.2d 843, 845 (Utah 1992); *Brittain*, 882 P.2d at 670. "We will resort to other methods of statutory interpretation only if we find the language of the statutes to be ambiguous." *Vigil*, 842 P.2d at 845. In this particular case, we need look no further than the statute's language. The plain meaning of section 13 is that a claim against a political subdivision is "barred" unless notice is filed with the "governing body" within one year of the claim arising. Utah Code Ann. § 63–30–13 (1993). The only remaining question concerns the term "governing body."

■■ Under existing statutory and case law there is no ambiguity to the term "governing body." The "governing body" of Salt Lake City is the mayor and the city council. *See* Utah Code Ann. § 10–1–104(2) (1992)[2]; *accord Yates*, 617 P.2d at 354 (finding that

---

1. The City argues the notices of claim were also deficient in other regards and did not meet the formal requirements of section 63–30–11(3). However, due to our disposition of this case on the issue of improper service, we do not reach this issue.

2. Section 10–1–104(2) states: " 'Governing body' means collectively the legislative body and the executive of any municipality." Utah Code Ann. § 10–1–104(2) (1992).

"governing body" was the county commission and that failure to file notice with the commission was fatal to plaintiff's claim). Because Bellonio never filed his notice of claim with either the mayor or the city council, his claim is barred. Utah Code Ann. § 63–30–13 (1993).

Bellonio argues that "governing body" contains a latent ambiguity and that, even if we find that it does not, it should be interpreted in an equitable fashion since service upon the Salt Lake City Attorney substantially fulfills the purposes behind the notice of claim requirement. We disagree. As noted in previous opinions of this court and the supreme court:

> " 'The primary purpose of a notice of claim requirement is to afford the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of a claim and to arrive at a timely settlement, if appropriate, thereby avoiding the expenditure of public revenue for costly and unnecessary litigation.' "

*Bischel,* 907 P.2d at 278 (quoting *Brittain,* 882 P.2d at 671 (quoting *Stahl v. Utah Transit Auth.,* 618 P.2d 480, 482 (Utah 1980))). While this statement, and others like it, may seem to indicate a flexible rule of constructive notice to governmental entities, this is not the general rule in this state.

Utah courts have typically required strict compliance with the notice of claim requirements except in certain very limited circumstances. *See, e.g., Scarborough v. Granite School Dist.,* 531 P.2d 480, 482 (Utah 1975) (construing former statute and noting that "where a cause of action is based upon a statute, full compliance with its requirements is a condition precedent to the right to maintain a suit."); *see also Brittain,* 882 P.2d at 669.

Nevertheless, in two recent opinions from this court, plaintiffs have been allowed to proceed despite certain inadequacies in their notice of claim filings. *See Bischel,* 907 P.2d at 279; *Brittain,* 882 P.2d at 672–73. However, the precedential effect of those cases is limited by their unique factual underpinnings and, therefore, neither should be construed as an indication that we are prepared to abrogate the long-standing rule requiring strict compliance with all aspects of the Governmental Immunity Act.

In *Brittain,* we determined that service of a notice of claim upon the attorney general and upon the State Division of Risk Management satisfied Utah Code Ann. § 63–30–12 (1993), which requires service upon the attorney general and upon the "agency concerned." 882 P.2d at 672. *Brittain,* however, is distinguishable from the present appeal in that it involved section 12 rather than section 13 of the Governmental Immunity Act. *Compare* Utah Code Ann. § 63–30–12 (1993) *with* Utah Code Ann. § 63–30–13 (1993). Therefore, while this court found it reasonable to construe Risk Management as the "agency concerned" in section 12, it does not follow, a fortiori, that the Salt Lake City Attorney is the "governing body" of Salt Lake City in section 13. In fact, in contradistinction to section 12, section 13 contains no indication that the City's legal counsel is entitled to any notice of claim. *See* Utah Code Ann. § 63–30–13 (1993).

Section 13, unlike section 12, contemplates that a notice of claim is to be directed only to a political subdivision's governing body, not to its legal counsel. This interpretation is consistent with the Utah Supreme Court's earlier pronouncements that a primary purpose of the notice of claim is to "afford the *responsible public authorities* an opportunity to pursue a proper and timely investigation of the merits of a claim." *Stahl,* 618 P.2d at 482 (construing section 12) (emphasis added).

Given our determination that section 13 requires service upon the mayor and the city council, this court's recent opinion in *Bischel* requires some elucidation. In *Bischel,* this court allowed a claim against Salt Lake County to proceed despite the fact that the notice of claim was, in fact, served upon the Salt Lake County Attorney, rather than upon the Salt Lake County Commission as dictated by section 13. *Bischel,* 907 P.2d at 278. While *Bischel* may, at first blush, appear to be controlling in this case, that opinion was based upon a unique set of facts which is absent in this appeal.

In *Bischel,* the plaintiff was unsure of how to serve the county commission with a notice of claim; therefore, she did an entirely sensible thing and called the commission to ask for instructions. *Id.* She was instructed, by

an agent of the commission, to serve her notice of claim upon the Salt Lake County Attorney. *Id.* On those facts, this court found that the plaintiff had complied with the statute, as misinterpreted for her by the county commission. *Id.* at 279. Thus, the end result in *Bischel* was not based upon a substantial compliance or constructive notice theory, but rather was founded upon the apparent agency of the commission employee. *Id.* at 278–79. The inequity of allowing the commission to base its defense upon its agent's misinformation prompted this court to utilize an estoppel-type argument to prevent the commission from forging the shield of governmental immunity into a sword. *Id.* at 279; *see also id.* at 280 (Bench, J., dissenting) (stating that majority's theory is implicitly one of estoppel).

Bellonio attempts to place himself within a similar factual scenario, arguing that the Airport's counsel told him to direct all correspondence to him personally. While it is clear that Kern did make such a request, he never indicated, either expressly or impliedly, that he was the proper agent to receive the statutorily mandated notice of claim, nor did Bellonio request from him any information regarding Governmental Immunity Act compliance. *See Scarborough,* 531 P.2d at 482 (finding no basis, under former law, for estoppel when principal of school admitted no liability and did nothing to hinder plaintiff's filing of notice of claim).

Furthermore, Bellonio's December 28, 1992 letter to Kern demonstrated Bellonio's apparent familiarity with the procedural requirements of the Governmental Immunity Act. Also, the fact that Bellonio served notices upon the attorney general and the airport director, in addition to the Salt Lake City Attorney and Kern, indicates an understanding that service upon Kern alone would not be sufficient.[3]

Finally, unlike the facts in *Bischel,* Kern was never the agent, apparently or in fact, of the mayor or the city council. While the Salt Lake Airport Authority is not a political subdivision, but rather a division of Salt Lake City Corporation, it is certainly not the governing body of Salt Lake City nor the agent of the mayor or the city council. Therefore, unlike the plaintiff in *Bischel,* Bellonio never even *attempted* to direct his notice of claim to the proper party, i.e., the mayor or the city council.

■ Accordingly, we conclude that Bellonio did not properly file his notice of claim and, therefore, his claim is barred by Utah Code Ann. § 63–30–13 (1993). Since a notice of claim is a statutory prerequisite to suit, the trial court was without jurisdiction to hear Bellonio's case and erred by allowing him to proceed. *Lamarr,* 828 P.2d at 540.

## CONCLUSION

Because Bellonio did not file the required notice of claim with the Salt Lake City Mayor or the Salt Lake City Council within one year, as required by Utah Code Ann. § 63–30–13 (1993), his claim is barred. Therefore, the trial court was without jurisdiction to allow his claim to proceed. Accordingly, we reverse the decision of the trial court and remand for an entry of judgment dismissing Bellonio's action with prejudice.

DAVIS, Associate P.J., concurs.

ORME, P.J., concurs in result.

---

3. We note that this shotgun approach to service—peppering the valley with notices of claim and hoping one will hit close to the mark—is an unsatisfactory way of assuring compliance with the statute. While such a strategy may often result in giving notice in fact, as the present case illustrates, it does not guarantee compliance with the Governmental Immunity Act.