2001 UT App 54

**GREAT WEST CASUALTY COMPANY, Lloyd Morris, and Judy K. Morris, Plaintiffs and Appellants,**

v.

**UTAH DEPARTMENT OF TRANSPORTATION and Does I–X, Defendants and Appellees.**

**No. 20000010–CA.**

Court of Appeals of Utah.

Feb. 23, 2001.

---

Preston L. Handy, Siegfried & Jensen, Murray, and Michael F. Richman, Michael F. Richman & Associates, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, and Nancy L. Kemp, Assistant Attorney General, Salt Lake City, for Appellees.

Before Associate Presiding Judge JACKSON, and Judges DAVIS, and ORME.

## OPINION

ORME, Judge:

.¶ 1 Great West Casualty Company challenges the trial court's grant of the Utah Department of Transportation's motion for summary judgment, premised on the inadequacy of notice under Utah's sovereign immunity scheme. With some reluctance, we affirm.

## BACKGROUND

¶ 2 The facts are undisputed. On October 20, 1997, Lloyd Morris was driving a truck on Interstate 80 when he came upon a cow in the highway. He struck the cow and rolled the truck. Both Lloyd and his wife Judy, a passenger in the vehicle, were injured, and the vehicle was damaged. The truck was owned by M & P Transportation and insured by Great West Casualty Company. Great West compensated M & P for the damage done to the truck.

¶ 3 On May 13, 1998, pursuant to the Utah Governmental Immunity Act, *see* Utah Code Ann. §§ 63-30-1 to -38 (1997 & Supp.2000), Morris filed a notice of claim against the Utah Department of Transportation (UDOT). *See* Utah Code Ann. § 63-30-11 (Supp. 2000).[1] The claim asserted that the cow's foray onto the highway resulted from UDOT's negligence in maintaining its roadside fence and that "[Morris] sustained serious injury to his person as well as significant damage to his semi-tractor in this collision. . . . The damage to claimant's semi exceeds $48,000.00." Neither Great West nor M & P ever filed their own notice of claim for the vehicle damage.

¶ 4 UDOT denied Morris's claim, so on February 10, 1999, Morris and his wife filed a personal injury suit against UDOT.[2] The complaint was later amended to add Great West, which sought to recover from UDOT the sum it paid M & P for the vehicle damage.

---

1. As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion.

2. In his complaint, Morris did not seek to recover for the property damage to the vehicle.

¶5 On October 8, 1999, UDOT moved for summary judgment against Great West, arguing that Great West's failure to file a notice of claim barred it from pursuing a lawsuit against UDOT. Great West opposed this motion by arguing that the notice of claim filed by Morris was sufficient to put UDOT on notice of the property damage claim now being asserted by Great West. The trial court granted UDOT's Motion for Summary Judgment. Great West appeals.[3]

## ISSUE AND STANDARD OF REVIEW

■ ¶6 The sole issue on appeal is whether Great West can rely upon a timely notice of claim filed by Morris, on his own behalf, that identifies the loss sustained by Great West but fails to reference Great West as a party to the claim. Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Harward v. Utah County*, 2000 UT App 222, ¶6, 63 P.3d 1140. We review summary judgment determinations for correctness, according no particular deference to the trial court, and evaluate the facts and inferences in the light most favorable to the non-moving party. *See Tallman v. City of Hurricane*, 1999 UT 55, ¶1, 985 P.2d 892.

## ANALYSIS

■ ¶7 Great West argues that Morris's notice of claim was legally sufficient to notify UDOT of Great West's property damage claim. Relying upon *Moreno v. Board of Education*, 926 P.2d 886 (Utah 1996), Great West contends that, as the real party in interest, it should be able to "piggyback" on Morris's notice of claim for the vehicle damage.

¶8 The Governmental Immunity Act requires that

[a]ny person having a claim for injury against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action....

Utah Code Ann. § 63–30–11(2) (Supp.2000). A notice of claim must contain "(i) a brief statement of the facts; (ii) the nature of the claim asserted; and (iii) the damages incurred by the claimant so far as they are known." *Id.* § 63–30–11(3)(a). In addition, the notice "shall be ... signed by the person making the claim or that person's agent, attorney, parent, or legal guardian[.]" *Id.* § 63–30–11(3)(b)(i). The notice of claim must be filed with both the attorney general and the agency concerned within one year after the claim arises, or the claim is barred. *See id.* § 63–30–12. *See also Rushton v. Salt Lake County*, 1999 UT 36, ¶18, 977 P.2d 1201 ("Failure to file such notice [of claim] deprives the court of subject matter jurisdiction.").

¶9 Utah courts have held that the notice provisions of the Governmental Immunity Act are to be strictly construed and that "full compliance with its requirements is a condition precedent to the right to maintain a suit." *Scarborough v. Granite Sch. Dist.*, 531 P.2d 480, 482 (Utah 1975). In general, even in situations where a governmental agency may be given actual notice of a party's claim, the party must still file a notice of claim in full compliance with the statute in order to pursue its claim. *See Rushton*, 1999 UT 36 at ¶19, 977 P.2d 1201.

¶10 However, the Utah Supreme Court in *Moreno* did loosen the standard for evaluating the adequacy of notices of claim to something less than "strict compliance" in certain situations.[4] *Moreno* involved the drowning

---

**3.** The Morrises have settled their claims with UDOT and are no longer involved in the case.

**4.** Consideration of the Supreme Court's *Moreno* decision requires some care. *Moreno* yielded two opinions—Justice Russon's lead opinion and Justice Howe's separate opinion. The Court unanimously concurred in portions of Justice Russon's opinion, and a majority of the Court concurred in Justice Howe's opinion. On the

issue primarily relevant to this case, Justice Russon's lead opinion did not have majority support, but his opinion concludes with a helpful summation of the majority's position on that same issue. While relying solely on portions of the opinions concurred in by a majority of the Court, we do not in our citations distinguish between Justice Russon's and Justice Howe's opinions.

of a boy named Bill in a swimming pool owned and operated by Jordan School District. *See* 926 P.2d at 887. Several years before, the Morenos were awarded permanent custody and guardianship of Bill, but the parental rights of Bill's natural mother, Laura Bartlett, were never terminated. *See id.* Following Bill's death, the Morenos filed a notice of claim, *on their own behalf,* seeking to recover damages for the wrongful death of "their" child under Utah Code Ann. § 78–11–6 (1996).[5] *See* 926 P.2d at 887. When the school district denied the Morenos' claim, they filed a wrongful death suit in district court. *See id.*

¶ 11 The school district moved for summary judgment, arguing that the Morenos could not maintain their wrongful death action because they were Bill's guardians, not his heirs. *See id.* At the same time, Bartlett sought to intervene in the action, asserting that she was the real party in interest. *See id.* at 887–88. However, Bartlett had never filed a notice of claim—timely or otherwise—and the school district argued that her failure barred her claim and therefore she should not be allowed to intervene. *See id.* at 888.

¶ 12 The trial court denied the school district's summary judgment motion, ruling that the Morenos could bring the action on their own behalf. *See id.* The trial court also denied Bartlett's intervention motion, ruling that the Morenos were the real party in interest. *See id.*

¶ 13 On appeal, the Supreme Court found that section 78–11–6 gave the Morenos the right to bring a wrongful death action but *only* "in behalf of the ward's heirs," *id.* at

890, in this case Bill's natural mother, Bartlett. *See id.* at 889–90. Because the Morenos had the authority as Bill's guardians to maintain an action for his wrongful death, albeit not in their own behalf, then "it follows that the guardian ha[d] the authority to file the prerequisite notice of claim." *See id.* at 892.

¶ 14 Despite her failure to file a notice of claim, the Supreme Court allowed Bartlett to "piggyback" on the Morenos' notice of claim and intervene in the action they filed. *See id.* The Court held that the notice of claim was sufficiently in compliance with section 63–30–11 for Bartlett to pursue her claim despite a clear defect in the notice: it claimed damages for *the Morenos'* loss instead of for Bartlett, the legally viable claimant. *See id.;* Utah Code Ann. § 63–30–11(3)(a)(iii) (Supp.2000) (providing notice must state "damages incurred *by the claimant* so far as they are known") (emphasis added). Overlooking the technical defect in the notice of claim, the Court found that the notice of claim gave the school district sufficient notice of all the facts surrounding the claim, the nature of the claim, and the amount of damages that would be sought—even though the Court noted that Bartlett's damages might well be less than those sought by the Morenos—and was therefore "legally sufficient to support the maintenance of [Bartlett's] wrongful death action." *Id.*

¶ 15 As a practical matter, and despite UDOT's protestations to the contrary, *Moreno* undeniably served to loosen the strict compliance standard for notices of claim in certain situations.[6] However, *Moreno* does not loosen the standard nearly as much as

---

5. This section states that "a parent or guardian may maintain an action for the death or injury of a minor child when the injury or death is caused by the wrongful act or neglect of another."

6. Significantly, the rule requiring "strict compliance" with the notice requirements of the Governmental Immunity Act does not come from the language of the act itself. *See* Utah Code Ann. §§ 63–30–1 to –38 (1997 & Supp.2000). Instead, the "strict compliance" standard was first applied to Utah's Governmental Immunity Act by the Utah Supreme Court in *Scarborough v. Granite School District,* 531 P.2d 480, 482 (Utah 1975). The shift in *Moreno* from a blanket "strict compliance" standard for notices of claim

to more of a "substantial compliance" standard, at least in certain situations, is fully consistent with the more charitable view taken in many other jurisdictions, which require only substantial compliance with the notice requirements of the state's governmental immunity statute. *See, e.g., Brasher v. City of Birmingham,* 341 So.2d 137, 138 (Ala.1976); *Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63, 69 (Colo.1990) (en banc); *Washington v. City of Columbus,* 136 Ga. App. 682, 222 S.E.2d 583, 589 (1975); *Vermeer v. Sneller,* 190 N.W.2d 389, 394 (Iowa 1971); *Carr v. Town of Shubuta,* 733 So.2d 261, 263 (Miss. 1999).

Great West argues in this appeal. The *Moreno* holding turns on one key concept, namely, the *standing* of the party who files the notice of claim. Only parties with standing to bring an action can file an effective notice of claim. See *Moreno*, 926 P.2d at 892. *Moreno* holds that so long as the filing party had standing to bring the suit, and thus had authority to file the claim, a third party entitled to all or a portion of the same claim may piggyback on the filing party's notice of claim and maintain an independent suit against the State. This is true even if the notice of claim does not name the third party as a claimant, and thus is not in strict compliance with the statute. The effect of *Moreno* is, in essence, to supplant the "strict compliance" standard with a standard of "pretty strict compliance" in cases of multiple claimants with standing to sue on the same claim.

¶ 16 Morris's notice of claim does not encompass Great West's claim and bring it within *Moreno*'s safety net because Morris lacked standing to bring a suit, and thus to file an effective notice of claim, for *damage to the vehicle*. At oral argument, both sides acknowledged that Morris was simply an employee of the actual owner of the truck, M & P Transportation, and had no colorable claim to recover for damages to the vehicle. Morris therefore had no authority to file the requisite notice of claim for damage to the truck, and neither M & P nor its insurer, Great West, could piggyback on Morris's notice of claim, as he had standing to pursue only a claim for personal injury.[7]

¶ 17 Although we are confident this is the correct result given controlling case law, the result is admittedly somewhat troubling in light of the fact that Morris's notice of claim, like the notice of claim in *Moreno*, fulfilled its intended purpose and gave UDOT "timely notice" of the property damage claim against it so that UDOT could "conduct an investigation" to see if the claim had merit. *Moreno*, 926 P.2d at 892. Yet, because of Morris's

lack of standing to pursue a claim for damage to the truck, Great West is not allowed to rely on the otherwise sufficient notice of claim, and UDOT avoids any responsibility for the property damage resulting from an accident that was allegedly its fault.

¶ 18 Aside from the niceties of prior case law adopting and reiterating a "strict compliance" standard found nowhere in the governing statute, if a technically deficient notice of claim nonetheless does what such a notice is designed to do and provides the State with enough information to become aware of the incident, conduct an investigation, and make an informed decision about its liability, the State should not be so quick to hide behind the cloak of "sovereign immunity." That doctrine arose when the monarch was rather antagonistic to his subjects and wished to insulate the treasury from the just claims of the peasantry, who were expected to embrace the fiction that "the King can do no wrong." We know better now, and in modern America, where the state enjoys a much more benevolent relationship with its citizens and has a more realistic view of its own fallibility, the enlightened sovereign should be willing to accept responsibility for its negligence when the deficiencies in a notice of claim do not actually prejudice its ability to investigate a claim, evaluate its merit, and resolve it in timely fashion. Such an adjustment in the philosophy underlying our State's sovereign immunity scheme must, however, come at the hands of the Legislature and not this court.

## CONCLUSION

¶ 19 The trial court properly granted UDOT's motion for summary judgment against Great West. Even though the standard of "strict compliance" concerning notices of claim has been softened in some circumstances by *Moreno*, Great West could

---

7. The result would be different if Morris could have shown that he had an interest in the truck supporting a claim for some portion of the damage. For example, had Morris been leasing the truck, been in a joint venture with M & P, or been the owner/operator of the truck, then he would have had standing to pursue a claim and thus could have filed an effective notice of claim.

Even as an employee driving the truck, Morris might have had standing if he could have shown either that his employment contract with M & P held him responsible to pay for damage to the truck or that M & P had informed him, after the accident, that they intended to hold him responsible for the damage. No such additional factor, however, is present in this case.

not rely on Morris's notice of claim in light of his lack of standing to recover damage to the truck.

¶ 20 Affirmed.

¶ 21 I concur: JAMES Z. DAVIS, Judge.

JACKSON, Associate Presiding Judge (concurring):

¶ 22 Unlike the majority, I have no reluctance whatsoever in affirming the trial court, and cannot agree with my colleagues' broader interpretation of *Moreno v. Bd. of Educ.*, 926 P.2d 886 (Utah 1996).

¶ 23 There is no question here that Great West did not file a notice of claim. Thus, only by bootstrapping itself onto Morris's notice of claim may Great West maintain its lawsuit against UDOT. Accordingly, Great West suggests that under the *Moreno* case, Great West may step into Morris's shoes as the real party in interest regarding the property damage claim. Great West analogizes from *Moreno* because in that case, although the Morenos' notice of claim was filed on their own behalf, the supreme court ruled the notice was "legally sufficient to support the maintenance of this wrongful death action" by the child's natural mother. *Moreno*, 926 P.2d 886, 892 (separate opinion of Howe, J., joined by Stewart, Associate C.J., and Durham, J.). The supreme court reasoned that "[s]ince [Utah Code Ann. § ] 78–11–6 authorizes a guardian to maintain an action for the wrongful death of his ward, it follows that the guardian has the authority to file the prerequisite notice of claim." *Id.*

¶ 24 The majority's interpretation of *Moreno* accepts the analogy, and seems to stand for the proposition that one party's notice of claim would be allowed to cover a party who did not file a notice of claim when each party has standing to pursue the same claim. Nevertheless, the holding in *Moreno* is readily distinguishable from our case. Great West has asserted no statutory or other legal basis, as the Morenos had, under which Morris was authorized to maintain an action or file a notice of claim for Great West. Thus, the supreme court in *Moreno* did not articulate a "substantial compliance" standard, but rather allowed one party's notice of claim to cover a

party who did not file a notice of claim *only* when the first party was legally authorized (e.g., by statute) to bring a lawsuit *on behalf of the second party.* *See Moreno*, 926 P.2d at 892. Great West therefore may not piggyback on Morris's notice of claim to avoid the responsibility of filing its own notice. This comports with the case law mandating strict compliance with the Governmental Immunity Act's notice-of-claim provisions. *See Rushton v. Salt Lake County*, 1999 UT 36, ¶ 19, 977 P.2d 1201; *Moreno*, 926 P.2d at 891.

¶ 25 Accordingly, I conclude the trial court correctly granted UDOT's motion for summary judgment against Great West. I would affirm without reluctance.